Ronald LANDON, Plaintiff,

v.

LIEF HOEGH AND CO., INC., Defendant.

A/S ARCADIA, Defendant and "Plaintiff" Seeking Joinder-Appellant,

v.

GULF INSURANCE COMPANY, Plaintiff or Defendant or Involuntary Plaintiff-Appellee.

No. 590, Docket 74–2304.

United States Court of Appeals, Second Circuit.

Argued May 21, 1975.

Decided June 18, 1975.

Certiorari Denied Jan. 12, 1976. See 96 S.Ct. 783.

---

Joseph T. Stearns, New York City (J. Ward O'Neill, Richard A. Corwin, and Haight, Gardner, Poor & Havens, New York City, of counsel), for defendant-appellant.

Philip F. DiCostanzo, Brooklyn, N. Y. (Robert Klonsky, Anthony J. Cutrona, and DiCostanzo, Klonsky & Cutrona, Brooklyn, N. Y., of counsel), for involuntary plaintiff-appellee.

Before MULLIGAN, TIMBERS and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This is a case of first impression in this circuit on the effect of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (the "Act") with respect to a claim by a shipowner against the stevedore employer of an injured longshoreman. It marks another episode in the continuing struggle of shipowner against stevedore.

This is a personal injury action brought by a longshoreman, Ronald Landon, against the shipowner, A/S ARCADIA, sued as Lief Hoegh & Co., Inc. The plaintiff claims to have been injured on the deck of defendant's vessel, M/S HOEGH OPAL, while at work near her No. 4 hatch. The accident occurred February 7, 1973 after the effective date of the 1972 amendments to the Act. Gulf Insurance Company ("Gulf") is the compensation carrier for plaintiff's employer, Pittston Stevedoring Corporation ("Pittston"). Plaintiff received benefits under the Act for temporary total disability in the amount of $736 and also received the benefit of the insurer's expenditure of $377 for medical attention rendered to the plaintiff. Gulf notified the shipowner's Claim Bureau that it claims an "indemnity lien" for the total amount of compensation benefits extended to the plaintiff.

The shipowner moved to join Gulf as a necessary party plaintiff pursuant to Rule 19(a), and to implead Pittston as a third-party defendant under Rule 14. Judge Dooling granted the motion. Pittston was not served.[1]

The shipowner alleged in the Rule 19 complaint that "[Gulf] may have a claim against the defendant" [shipowner] by virtue of its payment of compensation and medical expenses to and for the plaintiff pursuant to 33 U.S.C. § 933(h), under which Gulf was subrogated to the rights of its insured, Pittston. It alleged further that if the plaintiff sustained any injury the injury was caused by the contributing negligence of the plaintiff for whose actions Pittston and Gulf are responsible. The defendant shipowner

---

1. Rule 19(a) provides that a person subject to service of process, whose joinder will not deprive the court of subject matter jurisdiction shall be joined "if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

demanded judgment extinguishing any claim of Gulf against the defendant for the amount of any compensation paid or to be paid to the plaintiff.

Gulf, the involuntary plaintiff, filed an answer seeking dismissal of the Rule 19(a) complaint, and also counterclaimed for the full amount of its compensation lien if plaintiff should recover. The shipowner moved to strike the affirmative defense of Gulf that the § 19(a) complaint failed to state a claim for relief. Gulf then moved to dismiss the § 19(a) complaint. The District Court denied the motion to strike the affirmative defense of Gulf and granted the motion to dismiss. The District Court certified that there is no just reason for delay, F.R.Civ.P. 54(b), ordering entry of judgment. We consider the appeal.

By a 1972 amendment to section 5, the Act provides in 33 U.S.C. § 905(b) in pertinent part as follows:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." As amended Oct. 27, 1972, Pub.L. 92–576, § 18(a), 86 Stat. 1263.

Though the statute states that the shipowner cannot sue "the employer," [the stevedore] it does not specifically say that the stevedore cannot sue the shipowner. The appellant shipowner constructs an argument as follows:

The employer (or his carrier) has no "lien" on any recovery to which the plaintiff may be found entitled. What it has instead is a claim, a "cause of action" *against the shipowner* to recover damages for the shipowner's negligence to the extent of its exposure for compensation payments made for the benefit of the plaintiff. The employer Pittston (or its carrier) must assert this claim in this action because its claim to recover compensation payments is subject to defeat by proof of concurring negligence on the part of any employee of Pittston.

The appellant shipowner also moved to interpret the 1972 amendment to mean that the plaintiff can recover against it, in any event, only upon proof that his accident was caused by the *sole* negligence of the shipowner without any negligence whatever of the stevedore-employer contributing thereto. This ingenious argument requires a review of the situation antecedent to the 1972 amendments. The 1972 amendments provided for a substantially increased level of benefits (33 U.S.C. § 906(b)), with more employees covered, and, aside from important administrative changes, made their most significant changes in section 5 quoted above, by repealing the right of a longshoreman to sue a ship for unseaworthiness and abolishing breach of warranty claims by the ship against the stevedore-employer.

The appellant recognizes at the outset that the Supreme Court in *Pope & Talbot v. Hawn*, 346 U.S. 406, 411–12, 74 S.Ct. 202, 98 L.Ed. 143 (1953), held that section 33 of the Act, 33 U.S.C. § 933, has specific provisions to permit an employer to recoup his compensation payments out of any recovery from a third person negligently causing such injury,

and that, in any event, a reduction of the shipowner's liability to the plaintiff by the amount of the compensation payments would be the substantial equivalent of contribution by the employer, which the Court declined to require in *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). Appellant contends, however, that *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), overruled *Pope & Talbot, supra,* which is said to be no longer controlling.

Appellant contends that *Burnside, supra,* established that an employer-stevedore has a direct common law claim for the recovery of his compensation payments against the shipowner, rather than a lien against the proceeds of plaintiff's recovery. In view of such direct claim he is said to be a proper party and, once joined, is subject to a counterclaim for concurrent negligence.[2]

In the *Burnside* case, a shipowner sued a stevedore seeking indemnification for any judgment which the shipowner might be required to pay in a maritime wrongful death action brought by the executrix of an employee of the stevedore. The stevedore counterclaimed for the compensation it was required to pay to the widow and children. The counterclaim was dismissed on summary judgment and affirmed by the Court of Appeals. The Supreme Court reversed.

■ Generally, the right of subrogation ("assignment" to the employer, § 33(b) of the Act) which is afforded the stevedore's insurance carrier under § 33(h) suffices to permit it to recover the full amount of the compensation paid out of plaintiff's larger recovery. In *Burnside,* however, the applicable Illinois Wrongful Death Act limited the amount recoverable by the decedent's

representatives to $30,000, far short of the stevedore's potential compensation liability of $70,000. The *Burnside* action turned on whether the stevedore had a claim against the shipowner for his whole compensation liability, including that amount in excess of his right of subrogation under Section 33. The Supreme Court held that the stevedore had such a claim against the shipowner. It emphasized, however, that this was not based on any theory of shared responsibility for joint negligence, and was not a departure from *Halcyon, supra,* 394 U.S. at 417–18, 89 S.Ct. at 1152; it was founded not on the shipowner's wrong to the *longshoreman,* but on its "independent wrong" to the *stevedore* in failing to provide a safe place to work which had caused the *stevedore* damage. 394 U.S. at 418, 89 S.Ct. at 1152.

■ *Burnside* did not, however, overrule *Halcyon,* nor *Pope & Talbot.* The rule still remains that the shipowner may not deduct the compensation payments from the plaintiff's recovery but must pay them to the employer under section 33 of the Act. Only if there is a shortfall, as in the rather unusual circumstances of the *Burnside* case, is there any necessity for the employer to resort to a common law claim for the excess above the subrogated amount. In that event, he sues not on the theory of concurrent negligence to the plaintiff, but on the theory of direct negligence by the shipowner alone. This is an action he may never be in a position to bring. His notice of claim of an "indemnity lien" is not notice that he will bring such an action. Nor does the language of *Pope & Talbot* support appellant's view that the right of subrogation of the employer is different from a lien "to recoup his compensation payments *out of any recovery* from a third person." 346 U.S. at 412, 74 S.Ct. at 206. (Emphasis added.)[3]

---

2. When we refer to the employer-stevedore we also include its compensation insurance carrier, Gulf. 33 U.S.C. § 933(h).

3. It is true, of course, that section 33(b) does not speak in the language of "lien" but of "an assignment to the employer of all right of the

person entitled to compensation to recover damages against such third person", and provides that the employer, after six months "may . . . institute proceedings for the recovery of such damages" (§ 33(d)), but under the law, the compensation payment recoupment may not be defeated on the theory

■ Thus there is no claim by the employer, based on concurrent negligence, for contribution (*Halcyon*)[4] or indemnity (§ 905(b)), which generally would require that he be made a party to the action for the protection of the shipowner. His *Burnside* claim for relief would only become a practical remedy if it still exists, after it is determined that the compensation payments exceed the plaintiff's recovery. There is no ground to assume that such a claim for relief will be brought.

■ Accordingly, the employer is not an indispensable party under Rule 19(a). In the employer's absence, complete relief can be accorded among those already parties. The interest he claims is not in the litigation between the plaintiff and ship, but only in the plaintiff's recovery. It is not true that the ship will be under a substantial risk of double, multiple or otherwise inconsistent obligations, for if the plaintiff's recovery exceeds the compensation lien, the carrier will have its damages fully compensated for with no further risk to the ship. If the recovery is for less than the compensation lien, the damages to the employer or its carrier will have been reduced *pro tanto*. At worst the employer might be liable, in an independent cause of action, for an

excess above the compensation lien which, by hypothesis, it had not been required to pay to the plaintiff in the original action.[5] The employer is not a necessary party under 19(b) because it has no claim until the plaintiff has recovered against the ship, and because the employee is a statutory trustee of an express trust for the benefit of the employer. Rule 17(a). See *Pyle v. Kansas Gas & Electric Co.*, 23 F.R.D. 148 (D.Kan.1959). It is safe to say there will be no double recovery, and relatively few cases are likely to go to verdict where the recovery will be less than the lien.

We think, then, that even if Congress intended the *Burnside* rule to stand, a court should hold the stevedore (or his carrier) not to be an indispensable or a necessary party.

It may be, too, that a *Burnside* type of action no longer exists in the light of the provision that "the remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." 33 U.S.C. § 905(b). But that is a question we need not decide.[6]

It is evident from the history of the 1972 amendment that it was a compromise between shipowners and stevedores,

---

of concurrent negligence, in any event. As Judge Dooling observed below, " 'Lien' is simply a shorthand and approximate expression." In common parlance the right of the carrier is to share in the proceeds of the plaintiff's recovery and is referred to as a "lien."

4. In *Cooper Stevedoring Co. v. Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), the Court held that contribution would lie in a maritime non-collision case where the stevedore which was sued for contribution by the ship was *not* the employer of the plaintiff longshoreman. The Court said that where the stevedore was the employer "our decision in *Halcyon* was, and still is, good law on its facts." 417 U.S. at 115, 94 S.Ct. at 2179.

But a commentator has queried whether the language of § 905(b) was meant to adopt the rule of the *Halcyon* case. Gilmore & Black, Law of Admiralty, p. 451 (2nd Ed. 1975). We see nothing in the statute to exclude it.

5. Under § 33(f) the employer shall be required to pay as compensation "a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the amount recovered against such third person." Any *Burnside* action by the carrier for an excess over plaintiff's recovery would be brought only after the plaintiff's recovery had been established to be less than his compensation entitlement. The dictum in *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 381–82, 70 S.Ct. 207, 94 L.Ed. 171 (1949), that an insurance carrier is a necessary though not an indispensable party, is inapplicable for the foregoing reason.

6. The argument would be that section 905(b) includes employer and carrier in the phrase "or anyone otherwise entitled to recover damages by reason thereof" and allows only actions under section 933 which includes subrogation actions.

with the interest of longshoremen and employees paramount.[7]

The situation as it existed just prior to the 1972 amendments is familiar. The longshoreman's rate of compensation for injuries had not been raised by the Congress since 1961. The employer-stevedores contended that it was hard for them to pay any higher compensation because the compensation obligation had come to be not their only liability under Supreme Court precedents. The Supreme Court held in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), that a longshoreman, like a seaman, could sue a shipowner for breach of warranty of unseaworthiness, without proof of negligence. This liability for unseaworthiness thus imposed was absolute and non-delegable. *Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). If the stevedore had caused the unseaworthiness, he was held to be liable for his own breach of the warranty of workmanlike performance, and was liable to indemnify the shipowner, even though the stevedore could not have been sued directly by his employee, the longshoreman, because the latter's remedy against his employer was exclusively for compensation under the Act. *Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Co.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The majority in *Ryan* stressed the fact that "the Act prescribes no *quid pro quo* for a shipowner that is compelled to pay a judgment obtained against it for the full amount of a longshoreman's damages", *supra,* 350 U.S. at 129, 76 S.Ct. at 235. Congress has now given the shipowner his *quid pro quo* in the abolition of a longshoreman's right to recover on unseaworthiness.

In formulating the 1972 amendment to section 5 of the Act, 33 U.S.C. § 905(b), the Congress surveyed the tides of existing judicial doctrine. In amending the Act it apparently had several things in mind. The shipowner had been hard hit by the *Sieracki* application of the unseaworthiness doctrine to longshoremen. The stevedore had been hard hit by the *Ryan* doctrine. The shipowners contended before the Congressional committees that they needed the *Ryan* doctrine if they were to be held liable under the *Sieracki* doctrine. The stevedores complained that if they were required to make substantially higher compensation payments, they should be protected against the *Ryan* doctrine.

Excerpts from the House Report No. 1441 (Education and Labor Committee), U.S. Code Congressional and Administrative News, 92nd Cong., 2nd Sess., p. 4698 et seq. (1972) tell the story of the legislative compromise. After stating the background,[8] the Committee referred to the *Sieracki* and *Ryan* doctrines, and stated that "[t]he rationale which justifies holding the vessel absolutely liable to seamen if the vessel is unseaworthy does not apply with equal force to longshoremen and other non-seamen working on board a vessel while it is in port." *Id.* at 4703. In permitting the longshoreman to retain his right to sue the shipowner for negligence, the Committee intended to "place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore." *Id.*

7. See *Lucas v. "Brinknes" Schiffahrts Ges.,* 379 F.Supp. 759 (E.D.Pa.1974), a comprehensive opinion by Judge Huyett for an *ad hoc* panel of three district judges, for some of the colloquy in the Senate subcommittee, 379 F.Supp. at 767–72, which it is unnecessary to repeat.

8. "Although employer groups indicated their willingness to increase worker benefits, they sought a modification of a long line of Supreme Court rulings. These decisions ruled that a shipowner was liable under the doctrine of seaworthiness, for damages caused by any injury regardless of fault. In addition, shipping companies generally have succeeded in recovering the damages for which they are held liable to injured longshoremen from the stevedore's employer on theories of expressed or implied warranty, thereby transferring their liability to the actual employer of the longshoremen." H.R.Rep.No.1441, U.S.Code Cong. & Admin.News, 92nd Cong., 2nd Sess. at p. 4699.

"The Committee also believes that the doctrine of the *Ryan* case . . . is no longer appropriate if the vessel's liability is no longer to be absolute, as it essentially is under the seaworthiness doctrine. . . .

"Accordingly, the bill expressly prohibits such recovery, whether based on an implied or express warranty. It is the Committee's intention to prohibit such recovery under any theory including, without limitation, theories based on contract or tort.[9]

"Under the proposed amendments the vessel may not by contractual agreement *or otherwise* require the employer to indemnify it, in whole or *in part,* for such damages." *Id.* at 4704–05. (Emphasis added.) We read the emphasis "in whole or in part" to mean to exclude liability by the employer to any extent including the amount of the compensation payments. If Congress had intended otherwise, it would simply have excluded employer liability for concurrent negligence "except to the extent of its compensation payments." We think it is significant that no such exception was made.

■ Appellant's second argument that the plaintiff may not recover against the shipowner unless he proves that the ship's negligence was *solely* responsible for his injury is strictly not before us on this interlocutory appeal. However, because the contention may be raised in trials in the district courts of the circuit in actions covered by the 1972 amendments, we feel we should address ourselves to the contention which we believe to be insubstantial.

■ First, the draftsmen of section 5(b), 33 U.S.C. § 905(b), could easily have inserted the word "sole" so that the clause would have read "caused by the

'sole' negligence of the vessel." Nothing has been called to our attention to indicate such intention. Second, Congress would hardly have given the ship so little incentive to avoid being negligent toward its longshoremen invitees. Third, the scheme of the Act is to provide workmen's compensation for a longshoreman from his own employer, but with a right to sue the ship for negligence. We cannot agree that some negligence by the employer is enough to cut off the injured longshoreman's protected right to sue the ship for its own negligence.[10] Of course, if the negligence was *solely* that of the stevedore, the ship would have been found neither negligent nor liable.

Affirmed.

---

**9.** This has been interpreted to mean that "the amendments restored the exclusive liability provisions of the Longshoremen's Act . . ." Gorman, The Longshoremen's and Harbor Workers' Compensation Act—After the 1972 Amendments, Journal of Maritime Law and Commerce, October 1974, p. 1.

**10.** The appellant makes the practical argument that under Judge Dooling's decision it will be

more difficult for shipowners to settle longshoremen cases, since there is no incentive on the stevedore (or its carrier) to reduce its compensation lien to help the settlement if it is not subject to the defense of concurrent negligence. That may be true in some cases, but it is only one consideration in the whole congeries of relations involved and should be addressed to Congress.