Claudia BRKARIC, Administratrix of the Estate of Mario Brkaric, Deceased, and as mother and natural guardian of Ronald Brkaric and Mario Paul Brkaric, infants, and Claudia Brkaric, Individually, Plaintiff,

v.

STAR IRON & STEEL COMPANY et al., Defendants.

STAR IRON & STEEL COMPANY, Third-Party Plaintiff,

v.

HANNA FLUID POWER DIVISION et al., Third-Party Defendants.

CUTLER HAMMER, INC., Defendant and Third-Party Plaintiff,

v.

NORTHEAST MARINE TERMINAL CO. INC., and the City of New York, Third-Party Defendants.

No. 74–C–654.

United States District Court,
E. D. New York.

Feb. 2, 1976.

Burlingham, Underwood & Lord, New York City, for third-party defendant Northeast Marine Terminal Co. Inc. by William M. Kimball, New York City, of counsel.

Dominic J. Cornella, P. C., New York City, for defendant Cutler Hammer, Inc. by Irving Rosen, New York City, of counsel.

Hanner, Onorato & Hagerty, New York City, for defendants and third-party defendant Hanna Fluid Power Division, Rex Chainbelt, Inc. by Stephen I. Goldberg, New York City, of counsel.

W. Bernard Richland, Corp. Counsel of City of New York, New York City, for third-party defendant City of New York by George A. Weiler, Asst. Corp. Counsel, New York City, of counsel.

JUDD, District Judge.

## MEMORANDUM AND ORDER

Third-party defendant Northeast Marine Terminal Company, Inc. (Northeast), has moved to dismiss the third-party complaint of defendant and third-party plaintiff Cutler Hammer, Inc. (Cutler), and the cross-claims of certain defendants who claim indemnity or apportionment of liability in the event that plaintiff is successful in her wrongful death action.

The third-party claims find support in state law, and to some extent in maritime law, as well as under the "*Murray* credit" doctrine originally developed in the District of Columbia.

### Facts

On December 20, 1973, plaintiff's decedent, Mario Brkaric (Brkaric), who was employed by Northeast as a container crane mechanic, was working on a gantry crane located at or near the 39th Street Pier, Brooklyn, when the trolley cab lurched from its rails, throwing Brkaric from the catwalk of the cab into the navigable water 80 feet or more below. Death was caused by asphyxiation from submersion (drowning). At the time of the accident, Brkaric was checking or testing the crane, which was being operated by another Northeast employee.

Plaintiff brought an action for wrongful death and pain and suffering, alleging negligence, breach of warranty, and strict tort liability against Star Iron & Steel Company (Star), the designer, manufacturer and assembler of the crane. Star then filed a third-party complaint against Hanna Fluid Power Division, Rex Chainbelt, Inc., a/k/a Rexnord (Hanna), the manufacturer of shock absorbers or hydraulic bumpers, allegedly used in the crane; Fluid Air Components Inc. (Fluid), a distributor of Hanna, who sold the shock absorbers to Star; Diamond Manufacturing Co., Inc. (Diamond), manufacturer and assembler of certain structural steel components; Cutler, the designer, builder and installer of the electrical components and equipment used in the operation of the crane; Port Testing Co., Inc., the supplier of labor for the erection of the crane; and J. I. Hass Co., Inc. (Hass), the painter of certain portions of the crane.

Plaintiff thereafter filed an amended complaint, adding as defendants the same six corporations named in the third-party action; and Cutler brought another third-party action against Northeast and the City of New York (City), which owned the crane and leased it to Northeast. In addition to being decedent's employer, Northeast allegedly operated and maintained the crane as well as the premises at 33rd Street and Marginal Street where Star was to furnish and erect the crane.

Diversity jurisdiction under 28 U.S.C. § 1332 was claimed in the original complaint. Plaintiff is and decedent was a citizen of New York, while none of the defendants is a New York corporation and none has a principal place of business in this state. The jurisdictional amount is exceeded. Admiralty jurisdiction is also claimed in the amended complaint, under 28 U.S.C. § 1333. The main action seeks damages under state law and also under general maritime and admiralty law, asserting that the crane was for use in loading and unloading ships and cargo on navigable waters.

No shipowner is named as a defendant in either the main or third-party actions, and the pleadings do not assert that Brkaric was engaged in any activity in connection with a vessel at the time of the accident.

The amended third-party complaint of defendant Cutler claims indemnity or contribution from third-party defendants Northeast and City "in accordance with the principles of apportionment of liability." The negligence alleged against them consisted basically of failure: (1) to give proper warnings, instruction, and training concerning the use and maintenance of the crane; (2) to provide a safe place to work; and (3) to provide experienced co-workers. There is no claim that the right to indemnity or apportion-

ment is based on any contractual relationship between Cutler and either third-party defendant.

Hanna and the City have cross-claimed against Northeast and other defendants for indemnification based on negligence, claiming common law indemnity rights and apportionment under the *Dole v. Dow* principles described below.

Plaintiff has been paid compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (LHWCA) by Northeast's insurance carrier, State Insurance Fund, at the maximum compensation rate. She is currently receiving somewhat more than $10,000 per year ($210.53 per week) for herself and her children, or about half of his $21,500 salary. She also received death benefits and funeral expenses of over $15,000. The employer's first "Report of Accident" described Brkaric's occupation as longshoreman.

The precise cause of the accident has not been determined, but one theory is that Hass, working under Northeast's supervision, painted the piston rods of the shock absorbers in a manner to prevent their sliding in the cylinder.

All parties apparently assume that plaintiff has a cause of action against component manufacturers like Cutler and Hanna, if she can establish negligence or breach of an implied warranty. See *Clark v. Bendix Corp.*, 42 A.D.2d 727, 345 N.Y.S.2d 662 (2d Dept. 1973), distinguishing *Goldberg v. Kollsman Instrument Corp.*, 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963).

### Discussion

1. *Longshoremen's rights before and after 1972*

Under the terms of LHWCA, originally enacted in 1927, the liability of a longshoreman's employer was limited to compensation benefits. Section 5, 44 Stat. 1426, 33 U.S.C. § 905. Prior to 1972 the statute provided:

§ 905. Exclusiveness of liability

The liability of an employer prescribed in section 904 of this title shall be ex-

clusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, . . . ..

The injured stevedore was not strictly limited in his recovery to compensation benefits; actions were permitted against third parties. 33 U.S.C. § 933(a). In *Seas Shipping Co. Inc. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), the Supreme Court established absolute liability of vessel owners regardless of fault, if there were proof of unseaworthiness. In *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), the Supreme Court precluded the vessel owner from partial recovery by way of contribution even when the unseaworthiness was caused largely by negligence of the employer. Contribution has been allowed, however, from a party whom the plaintiff himself might sue and who is not entitled to the exclusive liability protection of LHWCA. *Cooper Stevedoring Co., Inc. v. Kopke, Inc.*, 417 U.S. 106, 114, 94 S.Ct. 2174, 2178, 40 L.Ed.2d 694 (1974).

In *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the court offered the vessel owner some relief from the absolute liability for unseaworthiness by allowing indemnification from the stevedore employer under contract theories of express or implied warranties to perform the stevedoring contract in a workmanlike fashion. The exclusive liability provision of Section 905 was thereby significantly eroded.

The amendments enacted in 1972 abolished the *Sieracki-Ryan* absolute liability-contract indemnification relationship. The exclusive liability section remained, renumbered as Section 905(a). Section 18(a) of the 1972 amendments, 33 U.S.C. § 905(b), permits suits by a longshoreman against a vessel owner only on the basis of the vessel's own negligence; and

prohibits agreements between the vessel owner and the stevedore for contribution or indemnification.

In exchange for the ending of the *Ryan*-type indemnification, the stevedore employers agreed to a substantial increase in maximum compensation benefits, reflecting the increased wages being paid to longshoremen. 33 U.S.C. § 906(b); Legislative History, House Report No. 1441, 3 U.S.Code Cong. & Admin.News, p. 4700 (1972).

In addition, the 1972 amendments to LHWCA redefined "employee" by expressly including "any longshoreman or other person engaged in longshoring operations," Section 2(a), 33 U.S.C. § 902(3), and extended the coverage to include injuries not only on navigable waters and dry-docks, but also on "any adjoining pier. . . ." 33 U.S.C. § 903(a). This change made obsolete the rule of *Nacirema Operating Co. Inc. v. Johnson*, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969) that a longshoreman must look to state law rather than LHWCA for injuries on a pier, not caused by a vessel. The power of Congress to change that rule had been mentioned in *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 214–16, 92 S.Ct. 418, 426–27, 30 L.Ed.2d 383 (1971).

Mr. Justice Stewart has referred to the 1972 act as covering employees "working on those areas of the shore customarily used in loading, unloading, repairing, or building a vessel." See *Executive Jet Aviation Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 260 n. 8, 93 S.Ct. 493, 501 n. 8, 34 L.Ed.2d 454 (1972).

The 1972 amendments were in effect at the time of the accident.

The Admiralty Jurisdiction Extension Act, however, was not changed by the 1972 amendments. That Act, 46 U.S.C. § 740, extends admiralty and maritime jurisdiction to all injuries "caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." As pointed out in the *Nacirema* case, Congress did not by that Act modify "the clear under-standing . . . that a pier injury was not on navigable waters but on land . . . .." 396 U.S. at 222, 90 S.Ct. at 353. A recent treatise says that state law may still apply to certain occurrences on a pier after the 1972 amendments, if the occurrences are not caused by a vessel. Gilmore and Black, *The Law of Admiralty* (2d ed. 1975), pp. 428–30.

### 2. The Problem

Third-party defendant Northeast argues that its payment of compensation benefits satisfies its total liabilities as set forth in 33 U.S.C. § 905(a). Defendant and third-party plaintiff Cutler and the cross-claimants argue that Sections 905(a) and (b) regulate the claim and claim over of the employee, employer and vessel owner, but do not control other third-party actions. They argue that component manufacturers were not involved in the *quid pro quo* of the 1972 amendments and should not be denied indemnification if plaintiff prevails in what they characterize as an industrial accident.

■ Since no claim is made that Brkaric's fall was due to the negligence of a vessel, the provisions of 33 U.S.C. § 905(b) appear to have no direct application. The court must therefore determine the reach of the exclusive remedy provisions in Section 905(a). *Ryan* shows that Section 905(a) does not protect against every theory of liability.

No post-amendment case seems to have considered the exact situation here, where a third-party claim arises from a pierside injury not related to a vessel.

### 3. Applicability of state law

Prior to the amendment, the pierside accident from which the present action arose would have come before the court only as a diversity action and, under the teachings of *Victory Carriers, supra*, would have been decided under principles of state law.

New York law, under *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y. S.2d 382, 282 N.E.2d 288 (1972), permits a third party to implead an employer for

purposes of assessing comparative negligence. The New York rule in *Dole* allowed contribution from an employer even though he was protected by the exclusive remedy provision of New York Workmen's Compensation Law § 11. Section 11 of the New York law had formed the model for the LHWCA provision, as noted in the *Ryan* case. 350 U.S. at 131 n. 5, 76 S.Ct. at 236 n. 5. *Dole* would allow the indemnification or contribution claims here to stand. The fact that Brkaric drowned in navigable waters would not dictate otherwise. In a case involving a longshoreman who was standing on a pier and knocked into the water by a blow from a sling on a ship, the court held that the blow took place on land and that "[t]he substance and consummation of the occurrence which gave rise to the cause of action took place on land." *Smith & Son v. Taylor*, 276 U.S. 179, 182, 48 S.Ct. 228, 229, 72 L.Ed. 520 (1928) quoted in *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. at 255, 93 S.Ct. at 498.

The *Dole* rule was reaffirmed in *Rogers v. Dorchester Associates*, 32 N.Y.2d 553, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973). The court there said of the *Dole* rule (32 N.Y.2d at 566, 347 N.Y.S.2d at 32, 300 N.E.2d at 410):

> [T]he apportionment rule applies to those who in fact share responsibility for causing the accident or harm,
> . . . . .

In *Briscoe v. Williams*, App.Div., 377 N.Y.S.2d 163 (2d Dept.), the *Dole* rule was also held to permit a third-party cross-claim against an employer for apportionment of damages, in spite of the exclusive remedy clause in New York State Workmen's Compensation Law, § 29(6) (virtually the same as 33 U.S.C. § 933(i)).

The 1972 amendments offer no clear guidance concerning the applicability of state law to injuries which do not involve a shipowner. As the Court of Appeals for this circuit noted in *Landon v. Lief Hoegh & Co., Inc.*, 521 F.2d 756, 761–62 (2d Cir. 1975), the 1972 amendments were

> . . . a compromise between shipowners and stevedores, with the interest of longshoremen and employees paramount.

The parties seeking indemnification or contribution are therefore correct in saying that the rights of non-vessel third-parties were not of concern in the 1972 amendments.

■ In the absence of any amendment of the Admiralty Jurisdiction Extension Act, the rights of all parties except Northeast must be governed by state law. The legislative history of the 1972 amendments shows no specific intent to protect a stevedore from third-party claims by anyone but a vessel. Whether Northeast is shielded from claims of non-vessel parties therefore requires further discussion.

### 4. *Contribution under maritime law*

If state law is not applicable to the claims against Northeast, as described above, the rules of maritime law must be considered.

Apportionment of liability between parties who share responsibility is a common principle of maritime law. *Cooper Stevedoring Co. Inc. v. Kopke, Inc.*, *supra*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694; *Horton & Horton, Inc. v. T/S J. E. Dyer*, 428 F.2d 1131 (5th Cir. 1970), *cert. denied*, 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971); *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31 (3d Cir. 1975).

Contribution as between a vessel and a stevedore was eliminated by 33 U.S.C. § 905. *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). The Court said in *Halcyon* that it had never expressly applied the ancient maritime rule of contribution to noncollision cases. 342 U.S. at 284, 72 S.Ct. at 279. However, in *Cooper Stevedoring Co. Inc. v. Kopke, Inc.*, 417 U.S. 106, 110, 94 S.Ct. 2174, 2176–77, 40 L.Ed.2d 694 (1974), the court stated that "the principle of divi-

sion of damages in admiralty has, over the years, been liberally extended by this Court in directions deemed just and proper." In *United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 404 (1975), the court further liberalized the rule of contribution by determining that it need not be fifty-fifty but should be proportional to the culpability and by applying it to a case of stranding, which was not strictly a collision case. The court distinguished the *Halcyon* case, 421 U.S. at 403 n. 4 and 95 S.Ct. at 1711–12 n. 4, and pointed out that "in our own admiralty law a rule of comparative negligence has long been applied with no untoward difficulties in personal injury actions." 421 U.S. at 407, 95 S.Ct. at 1714.

▓ The Fifth Circuit in *White v. Texas Eastern Transmission Corp.,* 512 F.2d 486, 489 (5th Cir. 1975), denied contribution or indemnity in tort to a component manufacturer against a maritime employer, on the theory that there could not be contribution without some "underlying tort liability" on the part of the employer to the employee. The necessity of such underlying tort liability is doubtful. An employer's liability is limited to the amount of compensation payable to an injured employee, but the employer's conduct may nevertheless be negligent in fact. The *Dole-Rogers-Briscoe* cases show that such negligence may be material in considering the rights of third parties. The employer is not immune from liability for negligence; its liability to its employee is merely restricted to a fixed amount, which is payable even when the employer did not cause the injury.

The difference between a component manufacturer and a vessel is emphasized by the reference to the employee's *quid pro quo* in cases such as *Ryan* and *Ocean Drilling & Exploration Co. v. Berry Brothers Oil Field Service, Inc.,* 377 F.2d 511 (5th Cir. 1967). For instance, in interpreting the exclusive remedy provisions of Section 905, the court in *Ocean Drilling* quotes from the Supreme Court in *Ryan* that

In return, the employee, and those claiming under or through him, are given a substantial *quid pro quo* in the form of an assured compensation, regardless of fault, as a substitute for their excluded claims.

*Id.* at 514. Cutler and the third-party claimants are not "claiming under or through" the employee. They have not shared in his *quid pro quo* and therefore are not within the reasoning of the cases cited by Northeast.

Cutler's third-party complaint does not allege any breach of duty by Northeast to Cutler. It recites numerous types of negligence of Northeast directed toward plaintiff's decedent, and alleges on that account that any judgment against Cutler "will have been caused and brought about in whole or in part by the negligence and carelessness of the third-party defendants."

Northeast cites *Lucas v. "Brinknes" Schiffahrts Ges.,* 379 F.Supp. 759 (E.D. Pa.1974), as supporting the dismissal of third-party complaints. The third-party complaints there, however, were by vessel owners, as indicated by the concluding words in the opinion (p. 769):

The various methods proposed by the vessel owners to shift their tort liability would cause a disruption in the scheme provided by Congress. To this extent the wisdom of the *Halcyon* case endures. It is for Congress to provide the proper balance. Courts' sense of fairness can only prove disruptive of that balance.

Similarly *Landon v. Lief Hoegh, supra,* was a vessel case, of which Judge Gurfein said (521 F.2d at 758):

[This case] marks another episode in the continuing struggle of shipowner against stevedore.

The court continued that "Congress has now given the shipowner his *quid pro quo* in the abolition of a longshoreman's right to recover on unseaworthiness." *Id.* at 762. The *Landon* case interpreted Section 905(b), which relates to "the negligence of a vessel," and has no application here. Judge Dooling at the

district level, in his Memorandum and Order of October 10, 1974 in the *Landon* case, said that his decision dismissing the third-party complaint "would enable the employer to off-load to the shipowner his entire liability under the Act even though the employer's negligence was the most significant proximate cause of the accident," and that this was a "sweeping and painful result."

Since the courts in *Landon* recognized that the result was harsh, the stevedore's negligence having been the major cause of the injury, the decision should not be extended beyond shipowners.

Northeast cites *Ocean Drilling & Exploration Co. v. Berry Brothers Oil Field Service, Inc.*, 377 F.2d 511 (5th Cir. 1967), but this case, like *White, supra*, 512 F.2d 486, rested on the ground that the LHWCA eliminated tort liability of the employer. It did not consider the *Dole v. Dow* basis for apportioning liability, nor deal with the *Murray* credit, described below.

Northeast finds more support, however, in the decision of our Court of Appeals in *Galimi v. Jetco, Inc.*, 514 F.2d 949 (2d Cir. 1975). There a government employee who was injured while loading buoys for transport filed a third-party action against the corporation which the government had engaged to transport the buoys, and the corporation filed a third-party complaint against the United States. The plaintiff had already received disability compensation under the Federal Employees Compensation Act, which has an exclusive remedy provision substantially identical to that in Section 905(a). This court's decision dismissing the third-party complaint (73–C–1290, Memorandum and Order dated October 10, 1974) had been based primarily on the argument of government immunity and the government's right to limit any waiver of immunity. The same was true of Judge Travia's parallel opinion, on which this court largely relied. *Sheridan v. DiGiorgio*, 372 F.Supp. 1373, 1376 (E.D.N.Y.1974), *aff'd without opinion*, 505 F.2d 727, *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 671 (1975).

The Court of Appeals in *Galimi*, however, based its opinion primarily on an analysis of the maritime cases involving contribution or indemnity from a stevedore employer. After stating that "[w]e emerge from the thicket without any clear sense of direction" (514 F.2d at 955), the court took the path followed in the majority of the circuits, which "would most probably be adopted by the Supreme Court were the issue presented directly," that

exclusive remedy provisions such as that in the original Longshoremen's and Harbor Workers' Act and the one before this court [FECA] shield an employer from a third-party suit for contribution.

514 F.2d at 956.

The *Galimi* case therefore cannot be distinguished as the City asserts, on the basis of the absence of any government immunity provision in Section 905(a).

Application of the *Galimi* case here, however, would create an anomaly in that *Dole v. Dow* would allow contribution in spite of an exclusive remedy clause which formed the model for Section 905, if the accident had occurred before the 1972 amendment extended the LHWCA to pierside accidents. Northeast argues that this right of contribution has been destroyed, although there is no evidence that Congress intended in its 1972 amendments to take away any rights of component manufacturers or other non-vessel parties.

The *Galimi* case, moreover, was decided before *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251, which adopted the rule of comparative negligence in dividing damages and stated that the goal of a "'just and equitable' allocation of damages . . . can be more nearly realized by a standard that allocates liability for damages according to comparative fault whenever possible." 421 U.S. at 411, 95 S.Ct. at 1715. Whether the *Reliable Transfer* case adopts a principle that may be applied to third-party contribution claims by non-vessel owners against stevedore employers is not com-

pletely clear, but the third-party claimants should not be deprived of the right to present their claims.

The absence of clear guidance from the cases brings the argument back to the question of what law applies, so that the question becomes not simply whether maritime law permits contribution in the current circumstances, but whether Congress intended to displace state law in relation to pierside accidents where a vessel was not involved.

*The Murray Credit*

Even if state law does not apply, another doctrine may be involved which has not been considered by the Supreme Court or the Second Circuit. In *Murray v. United States*, 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968), Judge Leventhal, with the concurrence of then Judge Burger, stated that a tortfeasor who was sued for an accident caused in part by the negligence of the employer, should be liable for only half the amount of damages sustained by the plaintiff, stating (p. 1366):

> The common law recovery of the injured employee is thus reduced in consequence of the employee's compensation act, but that act gave him assurance of compensation even in the absence of fault.

The court analogized the situation to one where one of two tortfeasors has "bought his peace" by settling before any judgment, with a resultant reduction of the judgment against the second tortfeasor. *Martello v. Hawley*, 112 U.S. App.D.C. 129, 300 F.2d 721 (1962).

A negligent stevedore may be said to have "bought his peace" by becoming obligated to pay substantial compensation awards under the 1972 amendments to LHWCA.

The *Murray* case arose under the Federal Employees' Compensation Act. 5 U.S.C. § 8101 *et seq.* The *Murray* rule was applied later to 33 U.S.C. § 905 of LHWCA in *Dawson v. Contractors Transport Corp.*, 151 U.S.App.D.C. 401, 467 F.2d 727 (1972). The *Dawson* case was non-maritime, involving a private

employer in the District of Columbia, but LHWCA was made applicable to the District of Columbia by 36 D.C.Code § 501, so that the case is an interpretation of the same statute involved here.

The *Dawson* case referred to the *Murray* credit and the whole question of contribution as being equitable in character, quoting from *Jones v. Schramm*, 436 F.2d 899, 900–901 (1970), that

> Contribution is an "equitable doctrine based on principle of justice,"—which is not dependent on contract, joint action, or original relationship of the parties.

467 F.2d at 731.

The court in *Dawson* further stated that "the *Murray* credit was adopted to prevent inequity in cases where workmen's compensation bars recovery in contribution." 467 F.2d at 732.

A district court in *Turner v. Excavation Construction, Inc.*, 324 F.Supp. 704 (D.D.C.1971), refused to apply the dictum in the *Murray* opinion on the ground that it was contrary to the Supreme Court's decisions in *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 411–12, 74 S.Ct. 202, 98 L.Ed. 143 (1953), refusing to reduce a stevedore's lien on the basis of the stevedore's negligence, and *Halcyon, supra*, but this did not deter the Court of Appeals from applying the *Murray* credit to a LHWCA case.

A Pennsylvania district court in *Lucas* stated that the *Murray* credit had never been applied in an admiralty case (see 379 F.Supp. at 764), but it did not point out why Section 905 should be interpreted differently in an admiralty case from any other case, if this be an admiralty case.

There is a problem in reconciling the *Murray* credit with *Pope & Talbot, Inc. v. Hawn, supra*, which held that reduction of the vessel owner's liability at the expense of the stevedore "would be the substantial equivalent of contribution which we declined to require in the Halcyon case." 346 U.S. at 412, 74 S.Ct. at 206. The court in *Dawson* responded that "the employer's right to reimburse-

ment from his employee is not an issue in this case." 467 F.2d at 730 n. 3.

This response is not entirely satisfactory, and seems inconsistent with the *Murray* opinion. Reduction of the stevedore's lien, as a means of implementing the *Murray* credit, finds support in an article jointly written by two experienced lawyers, one from a firm which often represents stevedores and another from a firm which often represents shipowners. Cohen and Dougherty, *The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: An Opportunity for Equitable Uniformity in Tripartite Industrial Accident Litigation*, 19 New York Law Forum 587, 606–07 (1974). That article proposes that where the employer is at fault, the third-party should be liable only for its proportion of the amount of the employee's damages, and that if employer negligence has diminished the employee's recovery, the employee should be able to deduct that amount from his obligation to reimburse compensation benefits.

The *Dawson* case was decided before *Reliable Transfer*. Relating the two cases together, the *Murray* credit might be allowed in an amount proportionate to the respective negligence, and not the 50 percent figure which was mentioned in the Murray opinion, and which has been criticized. 2 Larson's *Workmen's Compensation Law* (1975 ed.) § 76.22, pp. 318–19.

The *Murray* credit was approved by Judge Skopil of the District of Oregon in *Croshaw v. Koninklijke Nedlloyd, B/V,* 398 F.Supp. 1224 (D.Or.1975). He referred to "[t]he manifest injustice of subjecting a joint tortfeasor to an arbitrary level of damages despite minimal culpability, . . . ." and cited the *Reliable Transfer* case in support of his dictum. *Id.* at 1233. He reasoned that Congress in Section 905(b) had been concerned primarily with protecting the stevedore from liability based on unseaworthiness and continued,

Legislative history does not reveal whether Congress intended to protect the stevedore's equitable lien from his own negligent conduct as well. Such protection does not appear justified and would clearly violate fundamental principles of equity.

### Is the Plaintiff a Longshoreman?

All the foregoing may be tangential, on the present state of the pleadings.

The complaint does not assert that plaintiff's decedent was working as a longshoreman at the time of the injury. The facts do not enable the court to decide at this point whether he was engaged in loading or unloading a ship. The third-party claim does not assert that he was a longshoreman. For the purposes of this motion, Northeast's assertion in its report of accident, that he was a longshoreman, is a self-serving declaration.

In order for Northeast to have the benefit of the exclusive remedy provisions of LHWCA, Brkaric must have been "engaged in maritime employment." 33 U.S.C. § 902(3). As stated in Gorman, *The Longshoremen's and Harborworkers' Compensation Act—After the 1972 Amendments*, 6 Journal of Maritime Law and Commerce (October 1974), p. 8:

The Courts have not provided a definitive statement of what characterizes "maritime employment," and even the decisions that offer some guidance do not speak to what would characterize maritime employment on land areas used for loading, unloading, repairing, or building a vessel.

In seeking its way through the thicket of decisions and statutes, the court has found that the parties did not place blazes on every trail. The plaintiff, whose recovery may be affected, did not even submit a brief. The applicability of some of the reasoning above may have to yield to changes in fact, after the case has been tried, or to intermediate changes in law, but there is no clear basis at this point for dismissing the third-party claims.

The court is satisfied also that, for reasons similar to those cited by Judge

Rubin in *Fitzgerald v. Compania Naviera La Molinera*, 394 F.Supp. 402, 412 (E.D. La.1974), an interlocutory appeal would be inappropriate and would cause undue delay.

It is ordered that the motion of Northeast Marine Terminal Co., Inc. for an order dismissing the third-party complaint and cross-claims alleged against it be denied.