696 F.2d 703
 CRESCENT WHARF & WAREHOUSE CO., a corporation,
Plaintiff-Cross Appellee,
v.
BARRACUDA TANKER CORPORATION, Union Oil Company of
California, and Hendy International Company,
Defendants-Appellees-Cross Appellants.
Ralph M. Hartman, Director, Office of Workers' Compensation
Programs, Plaintiff-Intervenor-Appellant.
 Nos. 82-5290, 82-5298.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1982.
Decided Jan. 11, 1983.
 
 1
 Ruth E. Peters, Washington, D.C., Jack Williams, Glendale, Cal., for crescent.
 
 
 2
 Michael J. Faber, Lillick, McHose & Charles, Los Angeles, Cal., for Barracuda.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before FLETCHER and NELSON, Circuit Judges, and EAST,* Senior District Judge.
 
 EAST, Senior District Judge:
 
 5
 The plaintiff-intervenor, above named, (Director) appeals the final judgment of the District Court entered on January 12, 1982 which denied the Director indemnity from the negligent owners of the vessel Barracuda. The defendants, above named, (Owners) cross-appeal the above final judgment which granted the above-named plaintiff-cross appellee (Crescent Wharf) such indemnity.
 
 
 6
 We note jurisdiction and affirm.
 
 BACKGROUND:
 
 7
 In this admiralty action, Crescent Wharf sought indemnity from the Owners for all sums paid by Crescent Wharf pursuant to the award of compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901, et seq., (LHWCA) to its employee William J. Evans, injured while working on the Barracuda.
 
 
 8
 The Director intervened, seeking to obtain indemnity on behalf of the Special Fund established under Section 44 of the LHWCA, 33 U.S.C. Sec. 944, for all compensation paid or to be paid from the Special Fund.
 
 
 9
 The parties agreed by stipulation to bifurcate the issues of Owners' liability and damages and to limit the trial of the case to the issue of damages. Thus, while not admitting liability, the Owners agreed to pay whatever damages, if any, the District Court awarded.
 
 
 10
 After trial on the stipulated facts, the District Court issued a memorandum decision and order on January 12, 1982, ruling that:
 
 
 11
 1. Crescent Wharf had the right to bring a cause of action against the Owners as third parties responsible for the compensable injuries to employee Evans. (The court also determined the amount of damages owed Crescent Wharf.)
 
 
 12
 2. The Director did not have a right to maintain a cause of action for indemnity on behalf of the Special Fund.
 
 
 13
 This appeal followed.
 
 ISSUES ON REVIEW:
 
 14
 1. Was the District Court correct in concluding that the Director, on behalf of the Special Fund, did not have a cause of action for indemnity against the Owners as third party tort-feasors under the LHWCA?
 
 
 15
 2. Was the District Court correct in finding that Crescent Wharf had a viable cause of action under the Burnside decision in light of the 1972 amendments to the LHWCA?
 
 DISCUSSION:
 Issue 1:
 
 16
 Congress was fully aware that many longshoremen suffered a sequence of accidents, each of which caused some partial permanent disability but none of which by itself caused total permanent disability. The combined effect of these accidents, however, frequently was to render the worker totally and permanently disabled. Congress referred to these cases as so-called "second injury cases" and desired that such longshoremen be entitled to receive total disability benefits. In order to accomplish this end, Congress established the "second injury" Special Fund under Section 44 of the LHWCA, 33 U.S.C. Sec. 944, and placed the Special Fund under the administration of the Director who is the delegate of the Secretary of Labor.
 
 
 17
 Evans, the Crescent Wharf injured employee, was injured while working on the vessel Barracuda, and his claim for compensation under the LHWCA was settled by arbitration. His award of compensation for temporary and permanent total disability ended with the payment of the 104-weeks compensation, all of which was paid by Crescent Wharf. Thereafter Evans' disability compensation was paid by the Special Fund. The Director intervened in this action seeking to recover, by way of indemnity from the Owners, the amounts which the Special Fund has paid Evans and will have to pay in the future, together with attorney fees.
 
 
 18
 The Director argues that: first, the Special Fund's right to obtain indemnification may be implied from the Act and, second, such action for indemnification is supported by judicially created admiralty law under which quasi-contractual actions for indemnity have been recognized.
 
 
 19
 The District Court in its decision recognized the Director's standing to seek a replenishment of the Special Fund. However, it denied the Director's action for indemnity from the third party tort-feasors, the owners. In doing so, the District Court used Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), as its guide. While Northwest Airlines involves implication of a right of action for contribution under the Equal Pay Act, its reasoning is instructive here as well. Under Northwest Airlines, the Director may be found to have a cause of action for indemnification in one of two ways. First, a cause of action will exist if expressly or impliedly created by the LHWCA. Second, even if a cause of action is not statutorily created, it "may have become a part of the federal common law through the exercise of judicial power to fashion appropriate remedies for unlawful conduct." Id. at 90, 101 S.Ct. at 1580. From there, the District Court opined:
 
 
 20
 It is clear that the LHWCA does not expressly create a cause of action for indemnification. It is also clear that there is no federal common law right to indemnification under the LHWCA. In the 54 years since the special fund was created this court has found no cases allowing the Director ... to recover from the third-party tortfeasors money paid out of the special fund. Thus, a claim for indemnification may be found to exist only if such a claim may be implied from the Act.
 
 
 21
 Factors relevant to this court's inquiry are the language of the statute, its legislative history, and the underlying purpose and structure of the statutory scheme. Northwest Airlines, at [451 U.S. 91, 101 S.Ct. at 1580]. After examining these factors, this court is compelled to conclude that Congress did not intend to create the right of indemnification which the [Director] asserts in this action. First, it should be noted that this is not a case where the language of the statute indicates that it was enacted for the special benefit of a class of which the Director is a member. See, e.g., Cannon v. University of Chicago, 441 U.S. 677, 689 [99 S.Ct. 1946, 1953, 60 L.Ed.2d 560] (1979). As to legislative history, when Congress originally passed the Act in 1927 it specifically set out the sources of funding for the special fund. Those sources were increased by amendment in 1956 (33 U.S.C. Sec. 918(b)) at a time when Congress was concerned as to the adequacy of the funding for the fund. See H.R.Rep. No. 2067, 84th Cong., 2nd Sess. ---, reprinted in 1956 U.S.Code Cong. & Ad.News 3546-47. Additional sources of funding were again provided in the 1972 amendments to the Act. Pub.L. 92-576, Secs. 8(b) and (c), 33 U.S.C. Secs. 944(c) and 944(e). Yet despite this continuing concern for the solvency of the fund, Congress at no time has either created or even discussed the right of indemnification here at issue. Even if Congress did not intend the explicitly authorized sources of funding for the special fund to be the exclusive sources of funding, there is no indication that Congress intended to partially fund the special fund through the creation of a right of indemnification.
 
 
 22
 We agree and further note that this court recently held that where a statute provides a right of action in one area but not in another, there is a "rebuttable presumption" that the legislature did not intend to grant a cause of action in the area in which it was silent. "The expressio unius principle is based on a presumption that by providing a specific remedy, Congress intended to exclude others. Reason dictates that the more thoroughly a bill is considered, the greater the likelihood that the expressio unius presumption accurately reflects reality." Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n, 588 F.2d 1216, 1223 (9th Cir.1978), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).
 
 
 23
 "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." Northwest Airlines, 451 U.S. at 97, 101 S.Ct. at 1584. The LHWCA is such a legislative scheme. As the court said in Nations v. Morris, 483 F.2d 577, 588 (5th Cir.), cert. denied, 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477 (1973): "[The LHWCA] is comprehensive.... We think that the comprehensive scheme known as the [LHWCA] is the whole source of rights and remedies." (Emphasis in original).
 
 
 24
 The District Court did not err in ruling that the Director held no indemnity cause of action against the Owners.
 
 Issue 2:
 
 25
 The short answer to issue 2 is "Yes." The Supreme Court held in Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 385 (1969), that a plaintiff standing in the position of Crescent Wharf could recover from a vessel's owners the amount of compensation payments occasioned by the owners' negligence. Burnside controls here.
 
 
 26
 The Owners strenuously contend that Crescent Wharf's Burnside action for indemnity was abrogated by the 1972 amendments to the LHWCA. The Owners correctly claim that two mainstays of Burnside, Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), were expressly overruled by the 1972 amendments.[1] Such overruling, however, is not the end of our inquiry.
 
 
 27
 The legislative history of the 1972 amendments shows that Congress intended the elimination of the Ryan and Sieracki type of causes of action. However, no mention was made of the Burnside type of a cause of action.
 
 
 28
 The Supreme Court said in Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 266-67, 99 S.Ct. 2753, 2759-60, 61 L.Ed.2d 521 (1979) (addressing question of whether 1972 amendments to LHWCA altered shipowner liability): "This silence is most eloquent, for such reticence while contemplating an important and controversial change in existing law is unlikely."
 
 
 29
 Finally, the Owners rely upon Landon v. Lief Hoegh and Co., 521 F.2d 756 (2d Cir.1975), as rejecting the continued force of Burnside. The decision in Landon is devoid of any definitive rule or holding to that effect. In fact, the following statement from Landon decries such a definitive ruling:
 
 
 30
 We think then, that even if Congress intended the Burnside rule to stand, a court should hold the stevedore ... not to be an indispensable or a necessary party.
 
 
 31
 It may be, too, that a Burnside type of action no longer exists in the light of the provision that "the remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." 33 U.S.C. Sec. 905(b). But that is a question we need not decide.
 
 
 32
 Id. at 761 (footnote omitted) (emphasis added). To fully understand that statement from Landon, one must look to the factual picture and procedural posture forming the premise of the statement. In Landon, the validity of a Burnside type of recovery was not at issue. There a longshoreman was seeking damages for injuries allegedly caused by the vessel's unseaworthiness and its owner's negligence. The stevedore, the injured longshoreman's employer, was claiming a lien upon any recovery had by the injured employee in order to recoup compensation paid the injured employee. The vessel and her owners sought to interplead the stevedore as an indispensable and necessary party to the cause.
 
 
 33
 Landon points out that at no time during the history of Landon did the employing stevedore assert or claim a Burnside type of recovery from the vessel or her owners. The stevedore asserted only a claim against the injured employee as a lien upon any recovery had by the employee. As pointed out in Landon at 761: "The employer ... has no claim until the [injured employee] has recovered against the ship ...."
 
 
 34
 The one and only definitive rule in Landon is that "a court should hold the stevedore ... not to be an indispensable or a necessary party." Id. Landon carries no solace for the Owners.
 
 
 35
 We are controlled by this court's decision in Dodge v. Mitsui Shintaku Ginko K.K. Tokyo, 528 F.2d 669 (9th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). After considering the 1972 amendments to LHWCA and in particular Secs. 5(a) and (b) and 33, this court stated:
 
 
 36
 It is, however, equally clear that the employer's remedy under Sec. 33 of the Act is not his exclusive remedy. In Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404 [89 S.Ct. 1144, 22 L.Ed.2d 385] ... the Supreme Court noted:
 
 
 37
 When Congress imposed on the employer absolute liability for compensation, it explicitly made that liability exclusive. Yet in the same Act it attached no such exclusivity to the employer's action against third persons as subrogee to the rights of the employee or his representative.... [W]e can perceive no reason why Congress would have intended so to curtail the stevedoring contractor's rights against the shipowner.... [T]his Court [never] ... has held that statutory subrogation is the employer's exclusive remedy against third party wrongdoers, and we decline to so hold today. 394 U.S. at 412-14 [89 S.Ct. at 1148-50] ....
 
 
 38
 Id. at 673.[2] We decline to do otherwise today.
 
 
 39
 The District Court did not err in acknowledging and allowing Crescent Wharf a Burnside type of right and cause of action for indemnity against the Owners.
 
 
 40
 The District Court's final judgment appealed in Nos. 82-5290 and 82-5298 is affirmed.
 
 
 41
 AFFIRMED.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The substance of the 1972 amendments to the LHWCA are immaterial to these appeals except only as specifically referred to in this discussion
 
 
 [2]
 Dodge is approvingly cited twice in Edmonds, 443 U.S. at 259 n. 4, 99 S.Ct. at 2755 n. 4 and again at 271 n. 28