Milton MARANT

v.

FARRELL LINES, INC., Appellant.

No. 76–1383.

United States Court of Appeals,
Third Circuit.

Argued Nov. 16, 1976.

Decided Jan. 31, 1977.

Jeanne Ward Ryan, S. Gordon Elkins, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellant.

Arnold J. Wolf, Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for appellee.

Before VAN DUSEN, BIGGS and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The central dispositive issue on this appeal is the question of the relative responsibility of stevedore and shipowner for longshoreman safety under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. Marant, a longshoreman injured in unloading a cargo, brought this negligence action against Farrell Lines, the shipowner. The trial court charged the jury that stevedore and shipowner had concurrent responsibility for longshoring safety and the jury, by special verdict, found the stevedore and shipowner equally at fault in causing the injury. Damages were stipulated and judgment for the full amount was entered against Farrell. Farrell appealed. We reverse.

### I

Marant was employed as a longshoreman by the Lavino Shipping Company, an independent stevedoring contractor hired by Farrell Lines to discharge a cocoa bean cargo from its vessel, the S.S. African Moon, in Philadelphia. The beans had been loaded in Africa by African longshoremen under the supervision of the vessel's officers and, although the testimony was disputed, witnesses for the plaintiff testified that the cargo had been improperly stowed "bag on bag" (each layer of bags running in the same direction as the layer beneath it) instead of in the safer "lock stow" (each layer of bags running perpendicular to the layer beneath it). Marant was injured when a tier of bags collapsed and hit him. A witness testified that the collapsing tier was about 15 feet high, that it stood behind another tier 12 feet high, and that Marant was standing 6 or 7 feet from the tier that fell on him. The central issue at trial was the method adopted in stowing the bags.

The jury returned a liability verdict against Farrell. By special interrogatories it determined that Marant was not contributorily negligent, that Lavino and Farrell were both negligent, and that each had contributed 50 percent to the happening of the accident. Damages were stipulated as $20,000 and the district court entered judgment in favor of Marant and against Farrell in that amount. Farrell's motion for judgment notwithstanding the verdict or for a new trial was denied.

Farrell raises the following points on appeal:

(1) Under the 1972 Amendments to the LHWCA, the stevedore has the primary responsibility for longshoremen's safety and the vessel's duty is only to disclose latent defects of which it has knowledge. Under this law and the factual circumstances, the district court erroneously failed to direct a verdict for Farrell. In addition, it incorrectly charged the jury as to Farrell's duty under the law and compounded that error by repeating the original confusing charge verbatim when asked by the jury for clarification of the relative duties of vessel and stevedore.

(2) Under the 1972 Amendments to the LHWCA, a vessel cannot be held liable where the stevedore contributed to a longshoreman's injury.

(3) The jury verdict was clearly against the weight of the evidence.

(4) Where the jury found that Farrell's negligence contributed 50 percent to the happening of the accident, Farrell should be assessed only 50 percent, or $10,000, of the stipulated damages of $20,000.

## II

■ As a preliminary matter, we will deny Farrell's request for a directed verdict in its favor. We cannot say, as a matter of law, that the record is "critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Denneny v. Siegel,* 407 F.2d 433, 439 (3d Cir. 1969).

■ Farrell has challenged specifically that portion of the trial court's charge which informed the jury that "[t]he responsibility for the safety of the longshoreman lies concurrently or jointly with the longshoreman's employer, and with the shipowner." (546a–547a) Farrell asserts that this is an inaccurate statement of the relative responsibilities imposed by the 1972 Amendments to the LHWCA and that the trial court should have charged, as Farrell requested (405a), that the primary responsibility for longshoremen's safety was on the stevedore. A recent decision of this court, not available to the district court at the trial of this case, substantiates Farrell's position. Accordingly, on the basis of *Brown v. Rederi,* 545 F.2d 854 (3d Cir. 1976), we will order a new trial.

As Judge Van Dusen has recently observed, speaking for this court, "express language in the statute and the legislative reports accompanying the 1972 Amendments amply demonstrate that for reasons of policy the major responsibility for the proper and safe conduct of the work was to be borne by the stevedore." *Brown v. Rederi,* at 860. This was an important aspect of the legislative plan, intended to focus responsibility for longshoremen's safety on those best able to improve it, the stevedores. To say that responsibility is concurrent or joint is plainly inconsistent with the intention of the Act to place primary responsibility on the stevedore.

The principle of concurrent or joint responsibility was stated as the first substantive legal precept in the charge. It was reiterated later when the court told the jury that it was their job to decide if the stevedore was "solely or concurrently" responsible (548a), and it was, at least by implication, reinforced when the court charged that "[t]he duty to provide a reasonably safe place to work can rest upon more than one party, and it includes the owner of the vessel." (549a) After being sent out to deliberate, the jury returned to ask the court, *inter alia:* "Is it the ship's responsibility to provide a safe and reasonable place for the men to work in the hold as per your charge?" (569a–570a) The court answered by repeating verbatim the portion of its charge beginning:

> You have for your determination the claim that the owner of the vessel or its agents were negligent toward plaintiff, a longshoreman. The shipowner, for its part, denied plaintiff's allegation of negligence.
>
> The responsibility for the safety of a longshoreman lies concurrently or jointly with the longshoreman's employer and with the shipowner.

(570a) We have no way of knowing, of course, but it seems not unlikely that the equal responsibility portion of the jury instructions played a part, at least, in the jury's decision that the vessel and the stevedore were equally at fault in causing the accident.

The question of relative legal responsibility went to the very essence of the case; the jury's question amply evidences their awareness of its importance. Particularly under these circumstances, we believe that Farrell is entitled to a new trial. Upon remand, the district court will now have the advantage of our analysis of the 1972 Amendments in *Brown, supra,* and also in *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); and we will direct consideration of

these precedents insofar as they are relevant to issues that may be raised.[1]

## III

■ As a new trial will be required in any event, it is not necessary for us to meet appellant's additional points. We will take this opportunity, however, to express our concern about the question of apportionment of damages in cases where it is found that stevedore and vessel have been concurrently at fault. We recognize that the apportionment question is fraught with difficulty, that it involves largely intractable conflicting interests, and that it implicates in contradictory ways three ordinarily separate fields of law, to-wit, the common law of torts, statutory workmen's compensation law, and the law maritime. But, as we view it, there are really only three alternatives.

First, the vessel could be made to pay the whole of the damages without reduction for the stevedore's fault and without contribution from the stevedore. Second, the vessel, after paying the whole of the damages, might be held entitled to a true "contribution" from the stevedore, either in a fixed percentage or according to relative fault. Third, the vessel might be held entitled to a reduction of liability or a "credit" because of the stevedore's concurring fault, again, either in a fixed percentage or according to relative fault. This last concept of a credit to the vessel is a relative newcomer on the legal scene. It has been espoused by some of the commentators,[2] and embraced by several federal trial courts,[3] but, to date, has not found wide acceptance in appellate jurisprudence.

A fixed 50 percent reduction of recovery was allowed by the Court of Appeals for the District of Columbia Circuit in a case implicating the Federal Employees' Compensation Act, *Murray v. United States,* 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968), and has come to be known as a "Murray Cred-

---

1. In *Brown,* we emphasized the relevance of § 941(a) of the Act:

> Every employer shall furnish and maintain employment and places of employment which shall be reasonably safe for his employees in all employments covered by this chapter and shall install, furnish, maintain, and use such devices and safeguards with particular reference to equipment used by and working conditions established by such employers as the Secretary may determine by regulation or order to be reasonably necessary to protect the life, health, and safety of such employees, and to render safe such employment and places of employment and to prevent injury to his employees.

33 U.S.C. § 941(a) (1970).

We also indicated the possible importance of non-compliance with the applicable OSHA Safety and Health Regulations. The responsibility for compliance with the regulations is on employers. "It is not the intent of the regulations of this part to place additional responsibilities or duties on owners, operators, agents or masters of vessels unless such persons are acting as employers . . . ." 29 C.F.R. § 1918.2. The OSHA regulation relating to stowed cargo would seem to be of special relevance to the case at bar:

> 29 C.F.R. § 1918.83 Stowed cargo, tiering and breaking down.
> (a) When necessary, cargo shall be secured or blocked to prevent its shifting or falling.

> (b) In breaking down, precautions shall be taken, when necessary, to prevent the remaining cargo from falling.

2. The idea of a proportionate or "equitable" credit is proposed in Cohen and Dougherty, *The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: An Opportunity for Equitable Uniformity in Tripartite Industrial Accident Litigation,* 19 N.Y.L.F. 587 (1974). It is further discussed and advocated in Coleman and Daly, *Equitable Credit: Apportionment of Damages According to Fault in Tripartite Litigation Under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act,* 35 Md.L.Rev. 351 (1976).

3. *Croshaw v. Koninklijke Nedlloyd, B. V. Rijswijk,* 398 F.Supp. 1224 (D.Or.1975) (accepting credit in theory but declining to apply it because of contrary precedent in the district); *Frasca v. Prudential-Grace Lines, Inc.,* 394 F.Supp. 1092 (D.Md.1975); *Shellman v. United States Lines, Inc.,* 175 A.M.C. 362 (C.D.Cal. 1974), *rev'd,* 528 F.2d 675 (9th Cir. 1975); *contra, Santino v. Liberian Distance Transports, Inc.,* 405 F.Supp. 34 (W.D.Wash.1975); *Hubbard v. Great Pacific Shipping Co.,* 404 F.Supp. 1242 (D.Or.1975); *Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange, G.m.B.H. & Co.,* 379 F.Supp. 759 (E.D.Pa.1974) (specially convened three-judge panel).

it". Judge Leventhal, writing for a panel of himself, Judge McGowan, and now-Chief Justice Burger, explained the result thus:

A tortfeasor jointly responsible with an employer is not compelled to pay the total common law damages. The common law recovery of the injured employee is thus reduced in consequence of the employee's compensation act, but the act gave him assurance of compensation even in the absence of fault.

*Ibid.* at 1366. The Murray Credit was subsequently extended to a case arising under the pre-1972 LHWCA, *Dawson v. Contractors Transport Corp.,* 151 U.S.App.D.C. 401, 467 F.2d 727, 729–30 (1972), Judge McGowan further elaborating the result as follows:

Since employers covered by workmen's compensation statutes are not liable in tort to their injured employees, other tortfeasors are not entitled to contribution from negligent employers, and thus, before *Murray,* bore the entire burden of the tort damages.

To mitigate the harshness of this result, we held in *Murray* that a person against whom the employee was awarded damages in a tort action could reduce the judgment by 50 per cent if he could show that the employer's negligence contributed to the injury.[3]

[3] *Murray* was itself an extension of this court's rule in *Martello v. Hawley,* 112 U.S. App.D.C. 129, 300 F.2d 721 (1962), where we held that when a plaintiff settled his claim against one tortfeasor, another tortfeasor against whom the plaintiff actually brought suit was entitled to reduce a resulting judgment by 50%

Although *Murray* involved the Federal Employees' Compensation Act, 5 U.S.C. § 8101 et seq. (1970), its rationale applies equally to the virtually identical provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (1970). . . .

While *Dawson* did apply the credit concept to the LHWCA, the 1972 amendments were not implicated in the case and, accordingly, the question may be considered open whether the District of Columbia Circuit will continue to adhere to *Dawson* in cases arising under the 1972 amendments.

The idea of a reduction of recovery proportioned according to fault—an "Equitable Credit"—has been rejected by the only Court of Appeals that has directly considered it, the Ninth Circuit. In *Dodge v. Mitsui Shintaku Ginko,* 528 F.2d 669, 672 (9th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976), Senior Judge Brown rejected "both the Murray and Shellman [Equitable Credit] Doctrines because they are contrary to the greater weight of authority, and also because they impose unjustified burdens upon the injured longshoreman." Judge Brown reaffirmed this result, on identical grounds and for the same panel, in a companion case, *Shellman v. United States Lines,* 528 F.2d 675 (9th Cir. 1975), *cert. denied,* 425 U.S. 936, 96 S.Ct. 1668 (1976).

The Second Circuit in *Landon v. Lief Hoegh & Co.,* 521 F.2d 756 (2d Cir. 1975), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976), held that the stevedore was not a necessary or indispensable party in an action by the longshoreman against the vessel, but did not adjudicate the specific question of a credit. Similarly, the Supreme Court precedent most often cited on the question, *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1951), denied contribution from the stevedore-employer to the vessel but did not directly present for adjudication the possibility of a credit. And it is well established that "[a] decision is not authority as to any questions of law which were not raised or presented to the court, and were not considered and decided by it, even though they were logically present in the case and might have been argued, and even though such questions, if considered by the court, would have caused a different judgment to be given." H. Black, Law of Judicial Precedents 37 (1912). *See Kramer v. Scientific Control Corp.,* 534 F.2d 1085, 1090 (3d Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976).

Though our research has not been exhaustive, we do not perceive a "greater weight" of authority on the issue of a credit. On the contrary, our observation would be that, of the two courts of appeals that have considered the general credit concept

under the LHWCA, one has accepted it, albeit prior to the 1972 amendments, and one has rejected it. We have found no Supreme Court precedent directly dispositive of the issue, and the district courts are in disarray. Under these circumstances, and particularly in view of the Supreme Court's activist attitude in maritime matters, see *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), we believe that the question of a possible credit to the vessel in cases of concurrent stevedore-vessel negligence is, at least in this circuit, very much an open question.

The concurring opinion expresses concern that any credit or apportionment rule would lead to increased litigation and that, even "if" the present rule is unfair, change should come from Congress. This court being already inundated with LHWCA litigation to interpret the 1972 amendments, it is difficult—though concededly frightening—to imagine an increase. It would seem as likely, however, that a rule which equitably apportioned liability according to fault might decrease litigation and promote settlement, especially by removing the incentive of a large judgment against a shipowner who is only partly at fault. As the Supreme Court has recently observed: "Experience with comparative negligence in the personal injury area teaches that a rule of fairness in court will produce fair out-of-court settlements." *United States v. Reliable Transfer Co., supra*, 421 U.S. at 408, 95 S.Ct. at 1714. Concerning the propriety of judicial as against legislative action in this field, we will resist today the temptation to continue the venerable debate. Suffice it to say, in Judge Walter Schaefer's eloquent words, that "most depends upon the judge's unspoken notion as to the function of his court. If he views the role of the court as a passive one, he will be willing to delegate the responsibility for change, and he will not greatly care whether the delegated authority is exercised or not. If he views the court as an instrument of society designed to reflect in its decisions the morality of the community, he will be more likely to look precedent in the teeth and to measure it against the ideals and the aspirations of his time." W. Schaefer, *Precedent and Policy*, 34 U.Chi.L.Rev. 3 (1966) (quoted in R. Aldisert, The Judicial Process at 802, 814 (1976)). Although we have indicated some of our concerns on the difficult issue of apportionment, we emphasize, again, that we expressly do not decide the issue at this time.

The judgment of the district court will be reversed and the cause remanded for further proceedings in accordance with the foregoing.

VAN DUSEN, Circuit Judge, concurring:

I join in parts I and II of the majority opinion. Also, I agree with the conclusion of part III that the issues of apportionment of damages between the stevedore and the ship, where they are both at fault, should not be reached on this appeal. I cannot agree with the extensive dicta in part III, which I believe should be omitted until there is an appropriate record requiring decision of the issues discussed there. However, in view of part III of the majority opinion, I feel it is desirable to set forth a number of other factors which are relevant to the issues in part III and should be considered by any trial court which is required to directly face these issues in the future.

A judicial apportionment of damages doctrine in cases brought against the vessel under 33 U.S.C. § 905(b) may be inconsistent with the intent of Congress [1] in enact-

---

1. It is clear that Congress gave careful thought to the statutory scheme of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) and the changes in that scheme brought about by the enactment of P.L. 92–576 in 1972. Both Houses of Congress held extensive hearings on proposed bills incorporating different changes, see *Hearings on S. 2318, S.* 525, S. 1547 Before the Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92d Cong., 2d Sess. (1972), Hearings on H.R. 247, H.R. 3505, H.R. 12006, H.R. 15023 Before the Subcomm. on Labor of the House Comm. on Education and Labor, 92d Cong., 2d Sess. (1972), and both Houses wrote extensive committee reports to explain the purpose un-

ing P.L. 92–576 (Oct. 27, 1972) for these reasons:

1. A judicial doctrine of apportionment of damages in 905(b) cases would result in the increased litigation that Congress sought to avoid by the 1972 Amendments, which inserted this wording in 33 U.S.C. § 905(b):

"(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and *the employer shall not be liable to the vessel for such damages directly or indirectly* and any agreements or warranties to the contrary shall be void. . . . *The remedy provided in this subsection shall be exclusive of all other remedies against the vessel* except [the right of the employer of the longshoreman to recover compensation paid from a vessel found negligent under § 905(b). See 33 U.S.C. § 933(b).]"

(Emphasis supplied).

These Amendments inserted this language in 33 U.S.C. § 905(a):

"§ 905. *Exclusiveness of liability*

(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative . . . and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. . . ."

The Senate Report on P.L. 92–576 at 4–5, 9 and 11 uses this language:

"The social costs of these law suits, the delays, crowding of court calendars and the need to pay for lawyers' services have seldom resulted in a real increase in actual benefits for injured workers.

"For a number of years representatives of the employees have attempted to have the benefit levels under the Act raised so that injured workers would be properly protected by the Act. At the same time, employer groups indicated their willingness to increase such payments but indicated they could do so only if the Longshoremen's and Harbor Workers' Compensation Act were to again become the exclusive remedy against the stevedore as had been intended since its passage in 1927 until modified by various Supreme Court decisions.

. . . . .

"The Committee heard testimony that the number of third-party actions brought under the *Sieracki* and *Ryan* line of decisions has increased substantially in recent years and that much of the financial resources which could better be utilized to pay improved compensation benefits were now being spent to defray litigation costs. Industry witnesses testified that despite the fact that since 1961 injury frequency rates have decreased in the industry, and the maximum benefits payable under the Act have remained constant, the cost of compensation insurance for longshoremen has increased substantially because of the increased number of third party cases and legal expenses and higher recoveries in such cases. The Committee also heard testimony that in some cases workers were being encouraged not to file claims for compensation or to delay their return to work in the hope of increasing their possible recovery in a third party action. The Committees attention was also called to the decision in 1966 of the United States district court in Philadelphia concerning the impact of third party claims involving injured longshoremen on the backlog of personal injury cases in that court.[2]

derlying P.L. 92–576, see S.Rep. No. 1125, 92d Cong., 2d Sess. (1972), H.Rep. No. 1441, 92d Cong., 2d Sess. (1972). See also Comment, *Negligence Standards Under The 1972 Amendments to the Longshoremen's and Harbor*

*Workers' Compensation Act: Examining the Viewpoints*, 21 Vill.L.Rev. 244 (1975–1976).

**2.** This apparently refers to the case of *Turner v. Transportacion Maritima,* 44 F.R.D. 412 (E.D.

.    .    .    .    .

"Since the vessel's liability is to be based on its own negligence, and the vessel will no longer be liable under the seaworthiness doctrine for injuries which are really the fault of the stevedore, there is no longer any necessity for permitting the vessel to recover the damages for which it is liable to the injured worker from the stevedore or other employer of the worker.

"Furthermore, unless such hold-harmless, indemnity or contribution agreements are prohibited as a matter of public policy, vessels by their superior economic strength could circumvent and nullify the provisions of Section 5 of the Act by requiring indemnification from a covered employer for employee injuries.

"Accordingly, the bill expressly prohibits such recovery, whether based on an implied or express warranty. It is the

Committee's intention to prohibit such recovery under any theory including, without limitation, theories based on contract or tort.

"Under the proposed amendments the vessel may not by contractual agreement or otherwise require the employer to indemnify it, in whole or in part, for such damages."

Part III does not meet the problems raised by the authorities cited, since it appears that a likely result of the "equitable credit" doctrine or any similar apportionment of liability would be to, once again, drag the stevedore back into the litigation process (thus undermining the safety) [3] in order to defend the subrogation lien he has on the longshoreman's recovery against the vessel.[4] See *Pope & Talbot v. Hawn,* 346 U.S. 406, 411–12, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Third Circuit cases cited in footnote 6 of *Brown v. Rederi,* Opinion of November

---

Pa.1968), which described the court congestion in this Circuit caused by the decisions of *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). It may well be that a judicial apportionment of damages doctrine will increase litigation and may possibly have a similar impact in not only the district courts but this court as well. If such litigation does result, this will undermine the congressional purpose to free the courts from the burden of these longshoremen cases by enacting P.L. 92–576. The Chief Justice of the United States has pointed out that the impact of legislation and court decisions should be carefully considered by courts prescribing such legal rules. See, *e. g.,* The State of the Judiciary —1975, by Chief Justice Burger, 61 A.B.A.J. 439 (1975).

3. It is clear that a major congressional concern in enacting P.L. 92–576 was that maritime safety be enhanced. The Senate Report contains this language:

"It is important to note that adequate workmen's compensation benefits are not only essential to meeting the needs of the injured employee and his family, but, by assuring that the employer bears the cost of unsafe conditions, serve to strengthen the employer's incentive to provide the fullest measure of on-the-job safety.

"This consideration is particularly crucial with respect to high-risk occupations such as those covered by this Act. Longshoring, for example, has an injury frequency rate which is well over four times the average for manufacturing operations. It is the Committee's view that every appropriate means be applied toward improving the tragic and intolerable conditions which take such a heavy toll upon workers' lives and bodies in this industry, and such means clearly include vigorous enforcement of the Maritime Safety Amendments of 1958 and the Occupational Safety and Health Act of 1970, as well as a workmen's compensation system which maximizes industry's motivation to bring about such an improvement."
Senate Report No. 92–1125, 92d Cong., 2d Sess., 2 (1972).

4. It is clear that a judicial doctrine of apportionment of damages in these suits will make the stevedore an indispensable party to the action. If the stevedore is not a party, then any finding assessing his proportionate fault will not be *res judicata* against him in a later suit asserting those rights afforded to him by 33 U.S.C. § 933, as amended by P.L. 92–576. See, *e. g.,* Restatement of Judgments § 6 (1942). See paragraph 2 below.

4, 1976, 545 F.2d 854 (3d Cir.); 33 U.S.C. § 933, as amended.

2. In any event, the cases of *Murray v. United States*, 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968),[5] and *Dawson v. Contractors Transport Corp.*, 151 U.S.App.D.C. 401, 467 F.2d 727 (1972)[6] were decided before 1972 when the Congress amended 33 U.S.C. §§ 905 and 933, as the majority points out in part III of its opinion. For this reason, these cases have a doubtful value as precedent for creating a judicial doctrine of apportionment of damages in § 905(b) cases. Also, there are other substantial reservations concerning the applicability of *Dawson* and *Murray* in the maritime section 905(b) actions where an injured longshoreman sues the vessel, since both *Dawson* and *Murray* involved exclusively land-based employees engaged in exclusively land-based occupations when injured.[7] Secondly, the *Murray* opinion does not deal with the so-called "lien" right which the employer and compensation insurer (by way of subrogation) have under 33 U.S.C. § 933,[8] as amended by P.L. 92–576. In *Dawson*, Judge McGowan indicated his concern that the problems raised by § 933 had not been considered in the court's earlier opinion in *Murray*, using this language in note 3 at page 730:

> "The District Court was concerned primarily with the apparent inability of an employer, if *Murray* is applied, to obtain reimbursement for payments made under the compensation statute. [Citing cases.]

"The employer's right to reimbursement from his employee is not an issue in this case. Moreover, the question of *Murray's* validity was not argued to this panel, which, in any event, is without authority to overrule prior decisions of this court. Consequently, we assume the continuing validity of the *Murray* rule and its application to cases involving the Longshoremen's and Harbor Workers' Compensation Act."

3. Two of the leading admiralty jurisdictions have written decisions which indicate that those Circuits will not follow an "equitable credit" doctrine or any similar apportionment of liability in § 905(b) cases under the 1972 Amendments. See *Dodge v. Mitsui Shintaku Corp.*,[9] 528 F.2d 669, 672 (9th Cir. 1975); *Landon v. Lief Hoegh*, 521 F.2d 756, 760, 763 (2d Cir. 1975). It would seem that resolution of the "contribution" issue was a necessary step in *Landon* and since this Circuit shares admiralty jurisdiction with the Second Circuit over the country's major port complex, the New York-Newark-Elizabeth area, the *Landon* case especially, and also the *Dodge* case, ought to be considered carefully before this court accepts the "equitable credit" doctrine or any similar theory of apportionment of liability in § 905(b) cases. To enact a judicial apportionment of damages in this Circuit in view of these other cases may undermine the essential uniformity which the Congress intended the 1972 Amendments to the Long-

---

5. It is apparent from the *Murray* opinion that two important theoretical considerations in the court's mind in reaching the result were (1) the doctrine of sovereign immunity since the United States was the compensation employer, and (2) the "indemnification doctrine" of *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The sovereign immunity doctrine has no place in this case and the *Ryan* doctrine was explicitly abrogated by the Congress in enacting P.L. 92–576. See pages 148, 149 above.

6. In view of Judge McGowan's first sentence in *Dawson* and the fact that the district court did not allow a "Murray credit" set-off in the case, I have considerable doubt about the precise meaning of that case and consequently its applicability to longshoremen's third-party suits

brought under § 905(b), as amended by P.L. 92–576.

7. This factor formed the basis for Judge Huyett's rejection of the "Murray credit" in *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759, 764 (E.D.Pa.1975), *appeal dismissed*, No. 75–1223 (3d Cir., Apr. 30, 1975), *cert. denied*, 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975), a case cited by this court in *Brown*, *supra* at 858 note 6.

8. See *Brown*, *supra* at 858 note 6; 1A Benedict on Admiralty § 28 (7th ed. rev., 1973 release).

9. Most of the cases cited in note 3, page 145, of the majority opinion as supporting an apportionment of damages theory are from the Ninth Circuit and were decided before *Dodge*.

shoremen's and Harbor Worker's Compensation Act to have. See *Brown, supra*, 545 F.2d at pp. 862–863; see also G. Gilmore & C. Black, The Law of Admiralty, at 48 (2d ed. 1975) (hereinafter cited as Gilmore & Black).

4. In *Brown, supra*, we pointed out that the trial court's instruction erroneously imposed the stevedore's negligence upon the vessel. Apparently Congress intended that the doctrine of vicarious liability would not apply in § 905(b) actions. Similarly, the application of an "equitable credit" doctrine or other judicial apportionment of damages means that the longshoreman, in effect, will be *vicariously* liable for the negligence of his stevedore-employer to the extent that the amount of the reduction ($10,000. in this case) exceeds the compensation paid by the employer.[10] Such a result has been condemned by Dean Prosser. See W. Prosser, The Law of Torts, § 74 (4th ed. 1971). The unfairness of this result has increased and confused the litigation in the common law courts when they have engrafted a judicial apportionment of damages concept onto the situation of the workmen's compensation third-party suit where the injury occurred partially as a result of the negligence of the compensation employer. See the thorough review of this problem in 2A Larson, §§ 75.22–75.23; 76.00 *et seq.*; 77.00 *et seq.*

5. To create judicially an "apportionment of damages" doctrine into § 905(b) cases may greatly undercut major congressional policy considerations underlying the 1972 Amendments without providing adequate replacements for them. For instance, a major complaint of longshoremen's labor representatives in the Senate and House hearings considering the 1972 Amendments to §§ 933 and 905 was that most vessels upon which these men worked were of foreign registry and, thus, did not adhere to American safety standards under OSHA and other maritime safety statutes and regulations. Congress may have felt that, in allowing a longshoreman to recover full damages against the vessel without regard to the relative fault of the stevedore, a practical incentive would be provided for these vessels and their owners to adhere to American safety standards. Also, formulating the "rules" for uniform results under an "equitable credit" doctrine may well exceed the courts' Article III power. A court-created apportionment doctrine would be without a well formulated structure.[11] If the result of § 905(b) is unfair to the vessel

**10.** Professor Arthur Larson, a leading authority in the field of workmen's compensation law, offers the following analysis of *Murray:*

"Assume the total damages are $20,000, . . . if the plaintiff had received $9,000 in workmen's compensation under *Murray*, the employee would have to pay $9,000 over to the employer out of his $10,000 recovery, leaving him with a total recovery of compensation plus damages of only $10,000.

"On the practical and policy side, the prime defect of the *Murray* result is that there is no rational relation between the fifty percent reduction in plaintiff's recovery and the interests of either the employee or the employer. Let us go back to the facts of the *Kittleson* case with which this section opened. The compensation liability there was $6,800 and the third-party recovery was $60,000. If this situation were to arise under the *Murray* case, the plaintiff, instead of recovering $60,-000 and reimbursing the employer for $6,800, thus retaining $53,200, would recover only $30,000 from the third party, plus his $6,800 compensation, for a total of $36,800—in spite of the fact that at the trial he must be assumed to have established actual damages of

$60,000. By what conceivable logic can he be told that he should absorb a loss of $16,-400 for the benefit of the third-party tortfeasor?

"A rule capable of producing such a result is clearly unacceptable, particularly since its legal underpinnings are just as unsound as its practical result."

2A A. Larson, The Law of Workmen's Compensation, § 76.22 at pp. 14–318 to 14–319 (Release No. 17, 1974) (hereinafter cited as 2A Larson).

**11.** *United States v. Reliable Transfer*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), involved the abrogation of a completely court created rule. Applying that case to § 905(b) cases would be engrafting an apportionment of damages remedy onto a complex and carefully thought out statutory structure with which the Congress intended to fix the rights of the stevedore, vessel owner, and longshoreman. See also *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 388–408, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970); Gilmore & Black, §§ 6–31 to 6–33, 7–20; 2A Larson, §§ 76.00 *et seq.*

owner, he should apply for relief to the Congress and not to this court.