David BLACKBURN

v.

PRUDENTIAL LINES, INC.

Civ. A. No. 76–3554.

United States District Court,
E. D. Pennsylvania.

July 19, 1978.

Marvin I. Barish, Philadelphia, Pa., for plaintiff.

James A. Yulman, Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

A longshoreman brings this action against the owner of a vessel pursuant to § 5(b) of the Longshoremen's and Harbor Workers' Compensation Act of 1927, as amended in 1972 ("LHWCA"), 33 U.S.C. § 905(b), alleging that he was injured as a result of defendant's negligence while he was in the employ of a stevedoring company aboard defendant's vessel. Defendant has moved for summary judgment, relying on the deposition testimony of plaintiff and the legal standard of care owed to longshoremen by vessels under § 5(b) that was announced in *Hurst v. Triad Shipping Co.*, 554 F.2d 1237 (3d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). Defendant's argument is based on the premise that the plaintiff stated he slipped on oil and water which were not present at the time the stevedore commenced operation. On that premise, the motion raises questions concerning the scope of a shipowner's liability in this circuit for injuries sustained by a longshoreman during stevedoring operations.

## I. APPLICABLE STANDARD OF CARE UNDER LHWCA § 5(b)

■ Section 5(b) of the LHWCA provides in pertinent part:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warran-

ties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel . . ."

It is settled in the Third Circuit that this provision precludes the imposition of liability on vessels based on doctrines of nondelegable duty or on any absolute duty of care. *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 40 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

■ The Third Circuit has not yet defined precisely or completely the standard by which a vessel's conduct will be judged under § 5(b). It has, however, dealt in *Hurst v. Triad Shipping Co.* and in *Brown v. Ivarans Rederi A/S,* 545 F.2d 854 (3d Cir. 1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), with aspects of that standard to be applied when an injured employee of a stevedore seeks to impose liability on a vessel owner. The pervading principle in those cases is that common law negligence doctrines developed in admiralty provide the basis for recovery against vessels unless those doctrines are inconsistent with the congressional policies behind § 5(b). *Brown v. Ivarans Rederi A/S,* 545 F.2d at 863. Paramount among those policies is a vessel's non-liability for injuries caused by unsafe methods of operation by stevedores or longshoremen, except under exceptional circumstances. *Hurst v. Triad Shipping Co.,* 554 F.2d at 1250–51.

In *Hurst,* the court found inapplicable to § 5(b) cases the rules affixing liability on an employer (*i. e.,* the vessel) for the negligence of an independent contractor (*i. e.,* the stevedore) contained in §§ 416 through 429 of the *Restatement (Second) of Torts*

(1965), with the exception that there could be liability where the vessel maintains control over the operative details of the work done by independent contractors and fails to exercise reasonable care in that control. 554 F.2d at 1251–52, *quoting* § 414 of the *Restatement.* Holding the vessel liable for the negligence of an independent contractor in the absence of such control, the court concluded, would impose a nondelegable duty on the vessel, contrary to the congressional intent behind the 1972 amendments to the LHWCA. The Third Circuit's discussion of this point in *Hurst* discloses a strict view of the inapplicability to § 5(b) of doctrines of nondelegable duty. Accordingly, the statement in the House Report on the LHWCA amendments that "nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition" was construed narrowly as applying only to the condition of the ship and cargo itself and not as extending to supervision of the stevedore's activities. 554 F.2d at 1250 n.35, *quoting* H.R.Rep.No.1441, 92d Cong., 2d Sess. (1972), *reprinted in* 3 U.S.Code Cong. & Admin.News at 4704 (1972). *Cf. Slaughter v. S.S. Ronde,* 390 F.Supp. 637, 644 (S.D.Ga.1974), *aff'd per curiam,* 509 F.2d 973 (5th Cir. 1975) (interpreting broadly the responsibility to take corrective action).

■ Similarly, the Third Circuit has suggested in both *Brown* and *Hurst* that the doctrines defining the scope of landowners' liability for dangerous conditions on the land which are known or discoverable by invitees, codified in §§ 343 and 343A of the *Restatement,* are inapplicable to § 5(b) cases for two reasons: first, Congress specifically rejected the doctrine of assumption of risk in the 1972 amendments to this legislation, 545 F.2d at 863–64 n.10; and second, these sections might be read to create a duty on the vessel to become apprised of and warn longshoremen of dangerous features of the conduct of stevedores, 554

F.2d at 1249–50, n.35.[1] We conclude from the discussions in *Brown* and in *Hurst* that a vessel which has not retained control over the details of a stevedore's work cannot be held liable for injuries occurring after control has passed to the stevedore which result solely from the activities of the stevedore.

■ A vessel's liability is not so narrow when the injury is proximately caused by dangerous conditions of the ship or cargo. The *Restatement* sections to be applied in this context, Judge Van Dusen observed in *Brown*, are §§ 281–83, 302A, 305 and 452. 545 F.2d at 863, *cited in* 554 F.2d at 1250 n.35. The first three of these provisions define the standards for negligence, §§ 281–83, and the balance deal with tests of negligence where a third party's conduct (in this context, the stevedore's) is involved. Section 302A provides that conduct may be negligent where it creates a foreseeable and unreasonable risk of harm through the negligence of another person; § 305 permits negligence to be based on an actor's prevention of another from taking action necessary for the other's aid or protection; and § 452 concerns the circumstances under which a third party's failure to act is a superseding cause, relieving the original actor of any liability. We infer from the cases that these provisions establish the rules of law controlling a vessel's liability for injuries caused by conditions of the ship or cargo and that they apply regardless of whether the injury or negligent act occurs before or after control passes to the stevedore. This limited duty and potential liability define the extent of the vessel's respon-

sibility to take corrective action as the Third Circuit has construed it in *Hurst*. 554 F.2d at 1250 n.35.

■ It is undisputed that plaintiff was injured after the defendant surrendered to the stevedore control of that part of the vessel where plaintiff was injured. Consequently, plaintiff could hold defendant liable in either of two ways: (1) by demonstrating that defendant was negligent in failing to correct a dangerous condition of the vessel or the cargo not created by the stevedore—*e. g.*, oil and/or grease on the deck—and that this condition caused the injury;[2] or (2) by establishing that defendant retained control over the operative details of stevedoring operations at the time of the accident and failed to exercise reasonable care in that control.

■ We are unable, based on our reading of the Third Circuit cases, to agree with plaintiff that we can and should adopt the § 5(b) standard of care proposed by Judge Orrick in *Gallardo v. Westfal-Larsen & Co. A/ S*, 435 F.Supp. 484 (N.D.Cal.1977). That formulation is:

> "Before the commencement of stevedoring operations, the owner of a vessel in navigable waters has a duty to take reasonable remedial action with respect to all unreasonably dangerous conditions of which it has actual or constructive knowledge. After the commencement of stevedoring operations, the owner of a vessel in navigable waters has a duty to take reasonable remedial action with respect to all unreasonably dangerous conditions of which it has actual knowledge."

1. *Cf. Riddle v. Exxon Transp. Co.*, 563 F.2d 1103, 1111–12 (4th Cir. 1977) (suggesting that §§ 343 and 343A might apply in § 5(b) cases; *Napoli v. [Transpacific Carriers Corp. and Universal Cargo Carriers, Inc.] Hellenic Lines, Ltd.*, 536 F.2d 505, 508–09 (2d Cir. 1976) (applying §§ 343 and 343A in a § 5(b) action); and *Frasca v. Prudential-Grace Lines, Inc.*, 394 F.Supp. 1092, 1100–01 (D.Md.1975) (applying §§ 343 and 343A). The Third Circuit's reasoning persuades us, however, that these *Restatement* provisions are inapposite in such cases. *See also Davis v. Inca Compania Naviera S.A.*, 440 F.Supp. 448, 451–54 (W.D.Wash.1977), and *Gallardo v. Westfal-Larsen & Co. A/S*, 435

F.Supp. 484, 494 (N.D.Cal.1977), in which the courts reached the same conclusion.

2. This of course would include the possibilities of negligence under § 302A of the *Restatement* (based on defendant's actual or constructive realization that its actions involved unreasonable risk of harm to plaintiff through the negligence of a third person) and under § 305 (based on defendant's acts intended to prevent or realized by defendant to be likely to prevent plaintiff or others from taking actions which defendant realized were necessary for plaintiff's safety).

*Id.* at 490. Judge Orrick's standard proceeds from an analysis which, while both thorough and scholarly, diverges from that of the Third Circuit in his relatively narrow interpretation of "nondelegable" duties for which there can be no liability under the LHWCA, *id.* at 497. Essentially, his formulation premises a vessel's duty to take remedial actions after control passes to the stevedore on the vessel owner's actual knowledge of conditions. On the other hand, the Third Circuit has limited the shipowner's duty to remedying specific "conditions"—that is, those relating to the ship or cargo and not including the effects of the stevedoring operation. *Accord, Frasca v. Prudential-Grace Lines, Inc.,* 394 F.Supp. 1092 (D.Md.1975).[3] Unlike Judge Orrick's, this approach does not appear to deem relevant the actual knowledge of the vessel owner: a vessel owner's knowledge of the ship's or cargo's condition might be a factor in determining whether its conduct was negligent, but notice cannot, it seems, impose a duty to correct stevedore-caused conditions. Because of these differences, we conclude that we are unable to apply the *Gallardo* standard, whatever its merits may be.

## II. AFFIDAVIT OFFERED BY PLAINTIFF

Plaintiff has submitted the affidavit of Harry McDowell, another longshoreman who was working on defendant's vessel at the time plaintiff was injured. The affidavit states that there were patches of oil on the deck of the vessel when the longshoremen boarded and before they commenced their work, and that plaintiff was injured when he jumped off his forklift onto the deck and slipped, apparently as a result of landing on an oil patch. If the McDowell affidavit were properly before us, we would certainly conclude that a genuine issue of material fact existed in this case as to whether the vessel was negligent in leaving oil on the deck.

However, this affidavit was not offered until plaintiff's presentation in oral argument on February 8, 1978, although it was taken on February 2, 1978. Rule 56(c) of the Federal Rules of Civil Procedure provides quite clearly that a party opposing a summary judgment motion may serve affidavits "prior to the day of hearing." As Professor Moore notes, this provision is to be read in conjunction with that of F.R. Civ.P. 6(d), empowering us to permit affidavits in opposition to a motion to be served "at some other time." It might be within our discretion, therefore, to consider the affidavit of McDowell despite the fact that it was not submitted until the day of hearing. 6 *Moore's Federal Practice* ¶ 56.14[1], at 56–358 (1976).

■ Plaintiff has not offered any explanation or justification, however, for his failure to comply with the time requirement of Rule 56(c). Using Rule 6(d) to permit the affidavit to be used in opposition to defendant's motion under these circumstances would be unfair to defendant, which filed the motion, replied to plaintiff's opposition to the motion and argued the motion without knowledge of the existence of the affidavit. To allow plaintiff to rely on it now would extend the liberal tenor of the Federal Rules of Civil Procedure to an extreme in which they almost would cease to be rules at all. *See Beaufort Concrete Co. v. Atlantic States Construction Co.,* 352 F.2d 460 (5th Cir. 1965), *cert. denied,* 384 U.S. 1004, 86 S.Ct. 1908, 16 L.Ed.2d 1018 (1966). We hasten to point out that our decision not to consider this affidavit, assuming we have the discretion to do so, is based on the plaintiff's failure to make any showing of excusable neglect in not filing it timely (*i. e.,* by the day before oral argument). We might well feel compelled to conclude otherwise had any such showing been made. *See Woods v. Allied Concord Financial Corp. (Delaware),* 373 F.2d 733 (5th Cir. 1967).

---

**3.** *Gallardo* does not so limit the meaning of "conditions" and states that vessel owners are liable for negligently failing to correct any and all "hazardous conditions" arising after control has passed to the stevedores, so long as they have actual knowledge. 435 F.Supp. at 496.

## III. PLAINTIFF'S DEPOSITION AND SUMMARY JUDGMENT

Because we have concluded that plaintiff has failed to bring forth any competent evidence in opposition to the motion, the dispositive issue is whether the defendant has met its Rule 56 burden of establishing that there is no genuine issue as to any material fact. Defendant relies on plaintiff's deposition to achieve that end, and argues alternatively that it compels a conclusion that defendant was not negligent or that it reveals that it is, as a matter of law, freed from liability for its negligence because of the stevedore's superseding negligence.

According to that deposition, plaintiff at the time of the accident was operating a forklift in the hold of defendant's ship. He testified that he had been loading wooden cases containing automobile parts for approximately two hours when a case that was being carried over him tilted, spilling water on him, and that he leaped from his forklift, slipped on the deck, which had grease or oil and water on it, and was injured. Plaintiff stated that the deck was somewhat damp at the time he started working there, but he was unable to remember whether there was any grease on the deck before he started working there. The deposition reveals further that water had collected inside the cases and had spilled out during the loading operation, and that the oil and grease on the deck might have come from the forklift driven by plaintiff. At the time plaintiff was injured, he said, water, oil and grease were on the deck; in fact the plaintiff and others had noticed the slippery deck while he was operating his forklift before he was injured, and the longshoremen had spread sawdust on the deck in order to alleviate this condition.

■ We conclude from these facts that genuine issues of material fact exist as to when and how the oil and grease got on the deck, as to the reasonableness of defendant's conduct in allowing grease and oil to stand on the deck (if indeed it did so) at the time it surrendered control of this portion of the vessel to the stevedore and as to whether plaintiff's injury was caused by the oil and grease.[4] Of course, any such liability can be based only on negligent acts of defendant and not on the conduct of the stevedore in loading cargo onto the ship. In addition, plaintiff might be able to prevail under the "retained control" theory outlined in *Hurst;* plaintiff's testimony that he saw no employees of defendant does not preclude any factual issue as to that control.

Thus, while plaintiff's deposition does not make out a prima facie case of defendant's negligence, neither do the facts it contains and the inferences drawn from them preclude all possibilities of defendant's negligence. That the facts disclosed in plaintiff's deposition make less than a strong case (and indeed no case) against defendant, judged by the Third Circuit's standard for negligence under § 5(b), is not relevant at this point. Since these facts also do not establish that defendant was *not* negligent, the burden has not yet shifted to plaintiff to rebut these facts. The motion for summary judgment on this ground therefore must be denied.

## IV. DEFENDANT'S § 452 GROUND FOR SUMMARY JUDGMENT

■ Defendant also contends that, even if it negligently left oil and grease on the deck at the time control passed to the steve-

---

**4.** If defendant left oil and grease on the deck at the time it relinquished control to the stevedore, that conduct clearly would go to the "condition of the ship" and hence could be the basis of defendant's liability. If those substances came on the deck as a result of the activities of plaintiff or other longshoremen, however, they cannot be deemed to be within that condition simply because they were eventually part of the condition of the deck. To allow plaintiffs to expand the realm of "ship conditions" by such bootstrapping would render meaningless the distinction made by the Third Circuit in *Hurst.* For the same reason, the defendant cannot be liable on the basis of water on the deck which got there as a result of spillage during the stevedoring operation from the cases, which were not on the vessel at the time that operation began.

dore, summary judgment should lie on this record on the basis of § 452(2) of the *Restatement (Second) of Torts,* which the Third Circuit in *Brown v. Ivarans Rederi A/S* explicitly recognized as applicable to a § 5(b) case. 545 F.2d at 863. That subsection provides:

> "Where, because of the lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause."[5]

Defendant argues that, even assuming it was negligent, that negligence is not actionable by plaintiff because the duty to keep the deck free of oil had shifted at the time of the accident from it to the stevedore, whose failure to make the deck free of oil was a superseding cause under § 452(2). While we concede in the absence of case law that the scope of § 452(2)'s applicability in the stevedore-shipowner context is by no means clear, we conclude that this doctrine does not justify granting defendant's motion.

The *Restatement* formulation itself is not very instructive as to when a duty shifts under § 452(2) from a negligent actor to a third person. The provision merely states the conclusion ("where . . . the duty . . . is found to have shifted"), and the comment deems it "apparently impossible to state any comprehensive rule as to when such a decision will be made." § 452, Comment f. Several relevant factors are suggested, however: the degree of danger, the magnitude of risk, the position of the third party, the third party's knowledge of the danger, the third party's relation to plaintiff or defendant and the lapse of time between the defendant's negligence and plaintiff's injury. Defendant's demonstration of these factors is insufficient to show at this stage of the case the shifting of the duty.

The defendant places principal, if not sole, reliance on the applicability of an Oc-cupational Safety and Health Administration regulation imposing on the stevedore as an employer of longshoremen this duty: "Slippery conditions shall be eliminated as they occur." 29 C.F.R. §§ 1918.2(a), 1918.-3(c), 1918.91(c). Without a doubt, this section affixes upon the stevedore a duty to clean up oil spills on the deck which occur after control passes to it (and hence which the stevedore is in a position to eliminate upon occurrence). That duty may well extend to cleaning up spills which existed *before* the passage of control, even though the language "as they occur" would not be strictly complied with. Even if the duty is construed to extend that far, the regulation means only that the plaintiff might hold the stevedore as well as the shipowner liable in this case. *See Lucas v. "Brinknes" Schiffahrts Ges.,* 379 F.Supp. 759, 769 (E.D. Pa.1974). Defendant merely asserts, without demonstrating why, that this duty shifts at the time the stevedore comes on board from defendant's shoulders to the stevedore's rather than rests on both parties. The shifting certainly cannot be the consequence of the OSHA regulation itself, however, because 29 C.F.R. § 1918.2(b) prefaces these regulations by stating:

> "It is not the intent of the regulations of this part to place additional responsibilities or duties on owners, operators, agents or masters of vessels unless such persons are acting as employers, nor is it the intent of these regulations to relieve such owners, operators, agents or masters of vessels from responsibilities or duties now placed upon them by law, regulation or custom."

There can be no question that the law existing at the time these regulations were promulgated made a shipowner's leaving oil on a deck potential grounds for its liability. It consequently would be against the stated policy of the regulations to hold that shipowners as a general matter are relieved of liability for their negligence by the superseding negligence of stevedores because of these regulations themselves. *See Re-*

---

**5.** Section 452(1) limits the absolution from negligence on the basis of a third person's failure to prevent harm to those situations which are within § 452(2).

*statement (Second) of Torts* § 452, Comment e (1965) ("where the personal safety of third persons is threatened, it is probably true that normally any duty to exercise reasonable care for their protection cannot be shifted.")

Defendant cites *Marant v. Farrell Lines, Inc.,* 550 F.2d 142 (3d Cir. 1977), in support of its contention that § 452 is applicable here and that the shift occurs as soon as control passes to the stevedore. In *Marant,* the court held that a trial court's charge that responsibility for a longshoreman's safety rested concurrently with the stevedore and shipowner was erroneous in a case in which the jury had to determine the proportions in which the plaintiff's damages had been caused by the negligence of the stevedore and by that of the vessel. The essential issue in *Marant* of "relative legal responsibility," 550 F.2d at 144, is not before us on this motion. The court in *Marant* did not consider whether the "full responsibility" for negligent storage of cargo and failure to take safety precautions had passed to the stevedore, and indeed it contemplated a situation where both stevedore and shipowner could be liable. We find nothing in *Marant* or the other Third Circuit cases to suggest that the duty of avoiding and remedying unsafe deck conditions shifts entirely to the stevedore within the meaning of § 452 as soon as its operations on the vessel commence.[6]

Section 452 also could absolve the defendant from liability if we found on account of the interplay of the specific facts of this case that responsibility had shifted to the stevedore. *Restatement (Second) of Torts* § 452, Comment f (1965).[7] The defendant points to the facts that the injury occurred two hours after the stevedore had begun to work and that the stevedore had spread sawdust to alleviate slippery conditions. There can be no bright lines as to when the lapse of time is itself sufficient to make a shift of full responsibility. *See Restatement (Second) of Torts* § 452, Illustration 9 (1965) (six months sufficient for full shift); W. Prosser, *The Law of Torts* § 44, at 289 (1971) (describing the lapse of time cases as difficult to explain and suggesting they are best understood "merely on the ground that there must be a terminus somewhere, short of eternity, at which the second party becomes responsible in lieu of the first"). We do not believe two hours to be sufficient in this context for us to conclude that such a shift took place. Nor are we convinced that the stevedore's efforts to eliminate slippery conditions, apparently offered by defendant to indicate the stevedore's knowledge of the danger, make this one of the "exceptional cases" in which the entire responsibility had shifted. *Restatement (Second) of Torts* § 452, Comment d (1965).[8] The possibility survives, however, that we will determine at trial on the basis of all the facts that § 452 absolves defendant, or will permit the jury to do so if the facts are disputed. *See Restatement (Second) of Torts* § 453, Comments b & c (1965).

For the foregoing reasons, we will deny defendant's motion for summary judgment.

---

**6.** It should be noted in this connection that the "passing of control" to the stevedore alluded to in § 5(b) cases is not conclusive of the shifting of the responsibility for control, despite the semantic similarity. Rather, this phrase refers in the shipowner-stevedore context to non-existence of a duty upon the former to supervise the latter, the shipowner's ability to delegate its duties and the unavailability of *respondeat superior* to hold the shipowner liable for the stevedore's employees. *See Hurst v. Triad Shipping Co.,* 554 F.2d at 1246–52; *Gallardo v. Westfal-Larsen & Co. A/S,* 435 F.Supp. at 495–98.

**7.** We thus reject on the authority of *Brown,* 545 F.2d at 863 the position plaintiff appears to

take that such a duty can never be shifted in this context, Supplemental Brief at 9 & n. 2.

**8.** This would be a more telling factor if on the record before us the stevedore had been informed by the defendant of the oil and in response had told the defendant that it was aware of the danger presented by oil spillage on this deck and that it was taking all necessary precautions to make the surface safe, or if the defendant had communicated this fact to the stevedore and, while unable to remedy it, had urged the stevedore to do so. *See Restatement (Second) of Torts* § 452, Illustrations 5 & 7, 10 (1965).